THE PEOPLE *ex rel.* Louis FitzHenry, Appellee, *vs.* THE
UNION GAS AND ELECTRIC COMPANY, Appellant.

*Opinion filed April 18, 1912—Rehearing denied June 15, 1912.*

1. CORPORATIONS—*there is a distinction between franchise of a
corporation and its right to use streets.* There is a distinction be-
tween the franchise of a corporation and its right to exercise its
franchise in the streets of a city, as the former can emanate only
from the State while the latter is a privilege granted by the city.

2. SAME—*franchise of a lighting corporation exists independ-
ently of any action by city.* The franchise of a gas or electric
lighting corporation exists independently of any action by the city,
but under the law such franchise cannot be exercised except by
virtue of the license or permission given by the city.

3. SAME—*franchise of a corporation cannot be assigned.* The
franchise of a corporation is not assignable for the reason that it
is a grant of special power conferred by the State and cannot exist
independently of the corporation itself.

4. SAME—*mere sale of all the property of corporation does not
dissolve the corporation.* A sale by a corporation of all its prop-
erty does not dissolve the corporation, and all that will pass by
such a sale is such property as is clearly vendible.

5. SAME—*when a transaction between corporations is illegal.*
A transaction between corporations which involves not only a sale
of the property of one corporation to the other, but also the as-
signment of its stock to a trustee for the purpose of putting it out
of its power to thereafter engage in the business for which it was
chartered, as a competitor of the purchasing corporation, is ille-
gal, and confers no authority upon the purchasing corporation to
exercise the street rights and privileges of the selling corporation.

6. SAME—*gas and electric lighting corporations are quasi pub-
lic corporations.* Gas and electric lighting corporations are *quasi*
public corporations and the public has a greater and more direct
interest in their management and conduct than in the case of a
purely private corporation, as the lighting of a city is of great im-
portance to the welfare and safety of the public, and such corpo-
rations are for that reason granted privileges with reference to
the use of streets which are the equivalent of the power of emi-
nent domain.

7. SAME—*one public service corporation cannot contract with
another to suppress competition.* One public service corporation
cannot, by contract with a competing public service corporation,
divest the competing corporation of the power to exercise its fran-

chise and by tying up its stock prevent such competing corporation from again engaging in business.

8. SAME—*what is a violation of rule that one corporation can not hold stock in another.* An attempt by one corporation to hold stock in another by purchasing in the name of another and having the legal title held in the name of another in trust for the benefit of the purchasing corporation is contrary to law and the public policy of Illinois.

9. SAME—*a gas corporation has no power to purchase stock in other corporations.* A corporation organized under the general Incorporation act "to furnish and sell gas, electricity and other lighting and heating substances for light, heat and power purposes, for public and private uses," has no express power to purchase stock in other corporations, and as it is not necessary to make such purchase to carry into effect the object for which it was formed, such power it not given to it by implication.

10. SAME—*when corporation cannot take advantage of Gas act of 1897.* In order for a corporation to avail itself of the authority given by the Gas act of 1897 to purchase or lease the property of another corporation, it must, at the time of availing itself of the benefits of the act, be in the actual business of furnishing gas to consumers, and it is not enough that it has been organized to engage in that business.

11. SAME—*when doctrine of estoppel in pais is available in a quo warranto proceeding.* In a *quo warranto* proceeding against a corporation having a franchise from the State to engage in the gas business, to require it to show by what right it is exercising its franchise in the streets of a certain city, the city is the real party in interest, and the doctrine of estoppel *in pais* may, in a proper case, be invoked as a defense.

12. SAME—*when a city is estopped to oust gas company from use of streets.* Where a city has for ten years permitted a gas corporation to do such things as the city had power to authorize originally and to expend large sums of money in attempting to comply with the requirements of the municipal authorities, the city is estopped to oust the corporation from continuing the exercise of its franchise merely because it was not granted permission by ordinance to use the streets; but such estoppel does not give the corporation an exclusive or irrevocable privilege in the streets, and it is still subject to the constitution and laws of the State and to the control of the city council acting thereunder.

APPEAL from the Circuit Court of McLean county; the Hon. T. M. HARRIS, Judge, presiding.

LILLARD & WILLIAMS, and SIGMUND LIVINGSTON, (THOMAS M. LILLARD, of counsel,) for appellant.

W. H. STEAD, Attorney General, and T. E. DEMPCY, (LOUIS FITZHENRY, LESTER H. MARTIN, and A. W. PEASLEY, City Attorney, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an information in the nature of *quo warranto,* prosecuted in the name of the People by the Attorney General, upon the relation of Louis FitzHenry, city attorney of the city of Bloomington. The petition for leave to file the information states that the Attorney General is informed the Union Gas and Electric Company claims a right of use in and to the streets of the city of Bloomington by virtue of some alleged arrangement between it and the Citizens' Gas Light and Heating Company, a corporation which formerly did business in the city of Bloomington; also by reason of some arrangement between itself and a corporation known as the Bloomington Gas Light and Coke Company, both of which corporations, it is alleged, have been out of existence for many years. The petition further alleges, upon information, that the Union Gas and Electric Company has never received a grant of any kind from the city of Bloomington authorizing it to use or occupy the streets for laying and maintaining gas mains and pipes or for the purpose of erecting and maintaining poles and wires for the conveyance of electricity. With the petition was an affidavit of the relator setting out at length the history of the organization and operation of the Bloomington Gas Light and Coke Company, the Citizens' Gas Light and Heating Company and the Union Gas and Electric Company, together with ordinances passed relating to them in the business in which they were engaged and the manner in which they ceased to do business, and alleged reasons why the Union Gas and Electric Company was unlawfully using the streets of said

city of Bloomington for the purpose of laying and maintaining gas mains and pipes and for erecting and maintaining poles and wires for the purpose of furnishing light, heat and power in said city. Upon the presentation of the petition and affidavit leave was granted to file the information. Leave was so granted on the 26th day of February, 1910, and summons ordered returnable March 7, 1910.

The first count of the information charges the Union Gas and Electric Company, a corporation organized under the general incorporation laws of the State of Illinois, was, and for more than a month last past had been, and still is, unlawfully, without warrant, charter or grant, exercising the power, liberty, privilege and franchise of using and occupying the streets, alleys and public places in the city of Bloomington for the purpose of laying and maintaining a system of mains, pipes and other appliances for the distribution and sale of gas for heating and illuminating purposes. The second count charges said corporation with the same usurpation of power and authority in the use of the streets, alleys and public places of said city for the purpose of erecting and maintaining poles, wires and other appliances for distribution and sale of electricity for commercial purposes.

A motion by the Union Gas and Electric Company to quash the writ and information was overruled and leave was granted it to file a general and special demurrer. The demurrer was overruled, and thereupon respondent (hereafter called appellant) filed eight pleas. The pleas cover 190 pages of the printed abstract, and we will only attempt to briefly state the material issues raised by the pleas.

By its pleas appellant justified its exercise of corporate powers in the use of the streets of the city of Bloomington upon the ground that as grantee it succeeded to the rights, powers and privileges of the Bloomington Gas Light and Coke Company, a corporation organized by special act of the legislature February 14, 1855, and alleged to have been

granted a perpetual license or easement in the use of the streets by the city council; also as grantee of the rights, powers and privileges of the Citizens' Gas Light and Heating Company, a corporation organized under the general incorporation laws of the State of Illinois August 11, 1883, and alleged to have been granted a license or easement in the use of the streets for its gas business without limit as to its duration, and also a license to use the streets for furnishing light and power by electricity for a period of twenty years.   Other pleas are of estoppel, *laches,* and the five and seven years statutes of limitation.

The court sustained a demurrer to all the pleas and entered a judgment ousting appellant from the powers, liberties, privileges and franchise of using and occupying the streets, alleys and public places of the city of Bloomington for the purpose of laying and maintaining a system of mains, pipes or other appliances for the distribution and sale of gas for heating and illuminating purposes, and for erecting and maintaining poles, wires and other appliances for the distribution and sale of electricity for commercial purposes, and prohibiting appellant from the further exercise of any of said powers, privileges and franchises.   From that judgment appellant has prosecuted this appeal.

There is no averment in any plea that any ordinance was ever adopted by the city council authorizing appellant to exercise its franchise in and use the streets, alleys and public places of the city of Bloomington for the purpose of furnishing light, either by gas or electricity, except that an ordinance was adopted by the city council August 17, 1900, extending the period of the electric light license granted the Citizens' Gas Light and Heating Company from 1909 to 1935.   The justification is based upon the validity of the licenses, rights and privileges granted by the city council to the Bloomington Gas Light and Coke Company and the Citizens' Gas Light and Heating Company, and the validity of their transfer to the appellant, and its right, as grantee,

to exercise its corporate powers and franchise thereunder without the license or consent of the council.

Many questions are discussed by counsel in their briefs. The constitutionality of the special act of 1855 incorporating the Bloomington Gas Light and Coke Company; the validity of the grant to it of the right to use the streets for its mains and pipes; the duration of the grant; the lawful organization and existence of the Citizens' Gas Light and Heating Company and the validity of the street rights granted to it; the right of a corporation granted a franchise by the State to conduct the business of lighting in a city by gas or electricity to alien the license granted it by the city and thereby confer authority upon the grantee to engage in the business without further permit from the city, and numerous other questions, are discussed. In the view we take of the case it will neither be necessary nor profitable to pass upon all the questions which have been made the subject of argument by the respective counsel.

A brief history of the corporations from whom appellant claims to have secured its rights to use the streets, and the manner in which such rights were secured, is as follows:

It appears from the pleas that by special act of the legislature passed February 14, 1855, the Bloomington Gas Light and Coke Company was created a corporation with power and authority to manufacture and sell gas in the city of Bloomington, and to that end to erect the necessary works and apparatus, and, with the consent of the city authorities, to lay and maintain pipes in the streets. The value of the real estate it might own was limited to $5000. Its capital stock was $100,000. The corporation, it is alleged, was by resolution adopted by the city council March 1, 1855, granted the right and privilege of laying and maintaining pipes and mains in the streets, alleys and public places for the distribution of gas, and in pursuance of this license the corporation laid pipes and mains and entered upon the business of manufacturing and selling gas, and so

continued until March 1, 1884. Asahel Gridley, (or Gen. Gridley, as he is usually called in the city council proceedings,) early in the life of the corporation acquired all its capital stock, and in matters relating to the conducting of the gas business in the city of Bloomington the name of the corporation is rarely used but the records show the council dealt mostly with Gen. Gridley. According to an averment of the fourth plea, on July 25, 1859, an ordinance was adopted giving Gen. Gridley the right to lay gas pipes. He died testate in .1881. By his will he devised to trustees named, the capital stock, franchise, street mains, rights and property of the Bloomington Gas Light and Coke Company to operate in manufacturing and supplying gas in the city of Bloomington, with power to make necessary extensions and repairs, to be paid for out of the earnings of the corporation. Edward B. Gridley, a son of Gen. Gridley, was named and qualified as trustee. The other person named as trustee declined to accept the trust. February 8, 1884, Edward B. Gridley, as trustee and in his own right, executed a lease to the Citizens' Gas Light and Heating Company of all the physical property, "also the franchise of supplying gas in said city," of the Bloomington Gas Light and Coke Company for a term of twenty years, and assigned to the Citizens' Gas Light and Heating Company the capital stock of the Bloomington Gas Light and Coke Company, to hold as trustee "for the single and only purpose of voting for . the election of directors of the Bloomington Gas Light and Coke Company, and for that purpose and no other the Citizens' Gas Light and Heating Company shall during the continuance of this lease be considered the owner of all such stock." At the April term, 1899, of the circuit court of McLean county Edward B. Gridley and other heirs and devisees of Gen. Gridley, and Edward B. Gridley as trustee, filed a bill praying an order and decree for .the sale of the property, rights, effects and franchises of the Bloomington Gas Light and Coke Company. A decree was en-

tered for the sale of the property and municipal franchise of the corporation, and authorizing the trustee to make conveyance to the purchaser upon confirmation of the sale by the court. At the sale made pursuant to the decree, J. O. Willson, trustee, became the purchaser. The sale was approved and confirmed by the court, and Edward B. Gridley, trustee, was authorized and directed to make and deliver to the purchaser a deed. The deed was executed on April 25, 1899, and described the physical property of the corporation, also the capital stock owned by Gen. Gridley, and, as averred in the plea, all rights pertaining to said gas works or the proper working thereof. On the 29th day of July, 1899, J. O. Willson, trustee, made a deed conveying all the property, rights and franchises of the Bloomington Gas Light and Coke Company to the appellant, the Union Gas and Electric Company.

The Citizens' Gas Light and Heating Company was incorporated under the general incorporation laws of the State of Illinois on August 11, 1883, for the purpose of manufacturing and furnishing gas, light and heat in the city of Bloomington. September 15, 1883, the city council passed an ordinance granting the Citizens' Gas Light and Heating Company the privilege of laying its gas mains and pipes under the surface of the streets, alleys and public places of the city for the purpose of conveying gas for heating and illuminating purposes. The ordinance required the corporation to fill all trenches or excavations made by it and restore the streets or pavements to as good condition as they were formerly in, under the supervision of the committee on streets and alleys and the city engineer. The ordinance required the corporation to pay all damages that might be recovered against the city by reason of making excavations in the streets or failing to fill them, or that might result from laying its mains and pipes in the streets. The maximum charge permitted for gas was fixed at two dollars per thousand cubic feet. The ordinance was accepted in writ-

ing by the corporation, and it proceeded to construct a plant and manufacture and furnish gas until July, 1899. In 1899 the corporate powers of the Citizens' Gas Light and Heating Company were enlarged so as to authorize it to furnish electric light and power, and thereafter, in pursuance of an ordinance adopted by the city council, it constructed a plant, erected poles, strung wires and furnished electric light and power until it sold to appellant its entire gas and electric business and plant. It is averred the Citizens' Gas Light and Heating Company sold its entire "gas plant, street mains and pipes, municipal franchise or street easement ordinance aforesaid, in the city of Bloomington, and all of its property and effects, to J. O. Willson, as trustee, and afterwards, to-wit, on the 29th day of July, 1899, the said J. O. Willson, trustee, and the said Citizens' Gas Light and Heating Company, by their joint deed conveyed all of their said property, rights, effects, municipal franchise and street easement rights to the Union Gas and Electric Company." By virtue of this sale and purchase appellant claims to be the owner "of all of said property rights and effects, municipal ordinances, franchises and street easement rights, both as to electricity and gas, in the streets, alleys and public places of the city of Bloomington."

Appellant insists that the Bloomington Gas Light and Coke Company and the Citizens' Gas Light and Heating Company were lawfully organized and existing corporations, with valid grants to use the streets, at the time the conveyances were made by them to appellant; that the street grants and privileges of said corporations were the subject of sale and transfer, and vested in the grantee the same rights and privileges in the streets that the grantors had. The authorities on the question are not harmonious, and much confusion has arisen from not distinguishing clearly between the franchise of a corporation, which can only be granted by the State, and the permission, by ordinance, of a municipality for the exercise of the corporate

franchise within the municipality. The latter is not a franchise, although it is often so referred to. It is a license. (*Chicago City Railway Co.* v. *People,* 73 Ill. 541.) The franchise of a gas or electric lighting corporation exists independent of the action of the city, but under the law can only be exercised by virtue of the license or permission of the city. A very clear definition of a franchise was given by Mr. Justice Mulkey in *Fietsam* v. *Hay,* 122 Ill. 293, in these words: "Now, a franchise is nothing more than the right or privilege of being a corporation, and of doing such things, and such things only, as are authorized by the corporation's charter." A franchise is a grant or special privilege conferred by the sovereign power of the State. (*Chicago Municipal Gas Light Co.* v. *Town of Lake,* 130 Ill. 42.) As the franchise and corporation cannot exist independently, it is uniformly held that the franchise is not assignable. Appellant does not claim it succeeded to the franchise of the two older corporations, but that it did succeed to their street licenses and privileges, and that both the Bloomington Gas Light and Coke Company and the Citizens' Gas Light and Heating Company are still existing corporations and owners of the respective franchises granted them by the State. If, as contended, the street grants and privileges of said two corporations were valid and were property of the corporations subject to sale and transfer in the same manner as the property of purely private corporations, their conveyance did not dissolve the corporations. A sale by a corporation of all its property will not dissolve the corporation. All that will pass by such a sale will be such property as is clearly vendible. 3 Thompson on Corporations, sec. 2916; *Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310; *Reichwald* v. *Commercial Hotel Co.* 106 id. 439.

Under the view we take of this case its decision does not depend upon whether the street grants and licenses of the two old corporations were the subject of sale and trans-

fer so as to vest in the transferee or grantee the right to operate under them. The transactions between the two old corporations and appellant involved more than a mere sale by the former to the latter of their street grants and privileges. It involved the assignment of the stock of said two old corporations to a trustee, for the purpose of putting it out of their power to control their own organization or thereafter engage in the business for which they were chartered, as competitors of appellant. This, according to the authorities hereafter referred to, was illegal and conferred no authority upon appellant to use the streets.

Gas and electric lighting corporations are *quasi* public corporations, and the public has a greater and more direct interest in their management and conduct than in the case of a purely private corporation. Lighting a city is of great importance to the welfare and safety of the public. For that reason lighting corporations are granted privileges with reference to the use of the streets which are held the equivalent of the power of eminent domain. In *Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 Ill. 530, the court said (p. 539) : "The manufacture and distribution of illuminating gas by means of pipes or conduits placed, under legislative authority, in the streets of a town or city, is a business of a public character. It is the exercise of a franchise belonging to the State. The services, rendered and to be rendered for such grant, are of a public nature. Where the right to make and sell gas to the city and its inhabitants, under the conditions here named, is conferred upon a company, it is so conferred as well for the benefit of the public as of the company. * * * In the West Virginia case it was held that 'whenever the legislature by statute law has authorized any person or corporation to condemn the lands of others in order to carry on its business, the courts will regard this as a legislative declaration that this character of business is such as that the public has so great and direct an interest in, that the courts must hold it as

contrary to public policy to permit any restriction of it by private contract.' If clothing a corporation with the power of eminent domain,—that is, with the right to take an individual's property by paying him for it,—so stamps the business of such corporation with a public character that that business may not be restricted by contract, we see no reason why the same public character should not attach to a corporation which is vested with the right and power to tear up and use the streets of a great city. The fee of such streets is vested in the city for the benefit of the public. Any business which requires their use requires the use of property which belongs to the public."

In *Gibbs* v. *Baltimore Gas Co.* 130 U. S. 396, the Supreme Court of the United States said: "These gas companies entered the streets of Baltimore, under their charters, in the exercise of the equivalent of the power of eminent domain, and are to be held as having assumed an obligation to fulfill the public purposes to subserve which they were incorporated. At common law, corporations formed merely for pecuniary benefit of their shareholders could by a vote of the majority thereof part with their property and wind up their business, but corporations to which privileges are granted in order to enable them to accommodate the public, and in the proper discharge of whose duties the public are interested, do not come within the rule."

According to the pleas the Bloomington Gas Light and Coke Company was the only lighting corporation doing business in the city of Bloomington from 1855 until the Citizens' Gas Light and Heating Company was incorporated, in 1883, and licensed, by ordinance adopted by the city council, to use the streets in the exercise of its franchise. Within six months thereafter Edward B. Gridley, as trustee and in his own right, leased to the Citizens' Gas Light and Heating Company all the tangible property of the Bloomington Gas Light and Coke Company, also its "franchise

of supplying gas in said city," and at the same time all its stock was assigned to the lessee, to be voted by said lessee in the election of directors of the Bloomington Gas Light and Coke Company. For that purpose the lease provided that during its continuance the lessee should be considered the owner of all of said stock. By this act the Bloomington Gas Light and Coke Company surrendered its property and the right to carry on the business for which it was created, to its only competitor. Still retaining its corporate existence and the franchise held from the State, it surrendered and abandoned to a competitor the right to exercise that franchise, and with this surrender went all the capital stock of the corporation for the purpose of securing to the beneficiary of the transaction control of the corporation, and enabling it during the existence of the lease to prevent the corporation from again engaging in the business for which it was created. The lease was for a period of twenty years, but by virtue of a decree of court entered at the April term, 1899, Edward B. Gridley, trustee, sold the physical property, capital stock, and, as averred, all rights pertaining to said gas works or the proper working thereof, to J. O. Willson, trustee. The deed to the purchaser was executed on April 25, 1899. Appellant was granted a certificate of incorporation July 24, 1899. J. O. Willson was one of the incorporators. Its capital stock was $400,000. On July 29 J. O. Willson, trustee, executed a conveyance to appellant of all the property, rights and franchises of the Bloomington Gas Light and Coke Company. The fourth plea avers that the Citizens' Gas Light and Heating Company entered upon the business for which it was incorporated at once upon its obtaining a license from the city, and so continued until the month of July, 1899, when it "contracted and sold its entire said gas plant, street mains and pipes, municipal franchise or street easement ordinance contract aforesaid, in the city of Bloomington, and all its property and effects, to J. O. Willson, as trustee, and on July 29, 1899, said

J. O. Willson, trustee, and the Citizens' Gas Light and Heating Company," by their joint deed conveyed all of their said "property, rights, effects, municipal franchise and street easement rights" to appellant.

The pleas aver that neither of the two old corporations has forfeited or surrendered its charter or been dissolved and that their charters are still in full force and effect. The first plea avers the capital stock of the Bloomington Gas Light and Coke Company "is owned and held by First Trust and Savings Bank of Chicago, trustee." The second plea avers that the capital stock of the Citizens' Gas Light and Heating Company "is owned and held in trust by First Trust and Savings Bank of Chicago, as trustee." The fourth plea avers that the capital stock of the Bloomington Gas Light and Coke Company is in full force and effect, "and is in the possession of and owned by or held in trust by First Trust and Savings Bank of Chicago, as trustee, for the benefit of this respondent." The same averment is made with reference to the capital stock of the Citizens' Gas Light and Heating Company. The fifth plea avers the capital stock of the Bloomington Gas Light and Coke Company is in possession of and owned or held in trust by the First Trust and Savings Bank of Chicago, as trustee, "for the benefit of the stockholders of this respondent," and the same averment is made with reference to the capital stock of the Citizens' Gas Light and Heating Company. By the lease of its property and street rights and the assignment of its stock to J. O. Willson, trustee, the Bloomington Gas Light and Coke Company purported to surrender its right to manufacture and sell gas in the city of Bloomington to the lessee during the term of the lease,—twenty years. For whom Willson was acting as trustee is not directly shown by the pleas. He was the purchaser at the sale made by Gridley, trustee, in pursuance of the decree, and joined with the Citizens' Gas Light and Heating Company in the deed

to appellant, a corporation of which he was one of the incorporators.

Unless authorized by the Gas act of 1897, (which we will later refer to,) the acts and transactions by which appellant sought to secure to itself the sole right to control, exercise and enjoy the powers, rights and privileges that had been conferred upon the other corporations with reference to the manufacture and sale of gas and electric current in the city of Bloomington, were contrary to public policy and cannot be sustained. It could not be seriously contended that the transaction amounted to a consolidation. The two older corporations still exist and own their respective franchises granted by the State. They have disposed of their property and placed it out of their power to again obtain a license from the city, for their capital stock is held in trust for the benefit of appellant, and if the transaction is held valid, appellant or the trustee, as holder of the stock, can control the election of directors and their action. To sustain appellant's position would be, in effect, to hold that one public service corporation might, by contract with a competing public service corporation, divest the competing corporation of the power to exercise its franchise and by tying up its stock prevent such competing corporation from again engaging in business. If the appellant's purpose had not been to prevent competition it could have secured a license from the city to use the streets in the exercise of its franchise, subject to the existing rights of competing companies. It seems plain that in seeking to invest itself not only with the street rights of but also the control over the two existing companies, its object was to suppress competition. This court held in *Dunbar* v. *American Telephone Co.* 224 Ill. 9, that one corporation cannot own stock in another corporation, and an attempt to do so by purchasing in the name of another or having the legal title held in the name of another for the benefit of the purchasing corporation, is contrary to law and the public policy of this State.

The question as to the right of one corporation to hold stock in another corporation was before this court in *People* v. *Chicago Gas Trust Co.* 130 Ill. 268. The Chicago Gas Trust Company was organized under the general Incorporation act April 28, 1887. The object of its incorporation as set out in the statement filed with the Secretary of State was to build, erect, purchase or lease works for the manufacture, sale and distribution of gas and electricity for heat, light and power purposes, and "to purchase and hold or sell the capital stock  *  *  *  of any gas works or gas company or companies, or any electric company or companies, in said city of Chicago, Cook county, Illinois, or elsewhere in said State of Illinois." The Chicago Gas Trust Company thereupon purchased a majority of the capital stock of the Chicago Gas Light and Coke Company, the Consumers' Gas Company and the Equitable Gas Light and Fuel Company, the only gas companies then engaged in manufacturing and distributing gas and occupying the streets of the city with gas mains. An information was filed in the name of the People to require the Chicago Gas Trust Company to show by what warrant it was exercising certain powers, privileges and franchises therein described. The information alleged that said Chicago Gas Trust Company held a majority of the capital stock in each of the four gas companies above named; that it had the power to manage and control the four corporations; that by such control it had destroyed the diversity of interest and motive for competition between them which would otherwise exist in the manufacture, distribution and sale of illuminating gas, and had secured a monopoly in the business of furnishing gas to the city of Chicago and its inhabitants. The legality of the organization of the Chicago Gas Trust Company as a corporation was not questioned, but it was denied that it had the power "to purchase and hold  *  *  *  the capital stock" of other gas companies. In passing upon that question the court said (p. 283): "Corporations can

only exercise such powers as may be conferred by the legislative body creating them, either in express terms or by necessary implication, and the implied powers are presumed to exist to enable such bodies to carry out the express powers granted and to accomplish the purposes of their creation. * * * Where a charter in express terms confers upon a corporation the power to maintain and operate works for the manufacture and sale of gas, it is not a necessary implication therefrom that the power to purchase stock in other gas companies should also exist. There is no necessary connection between manufacturing gas and buying stocks. If the purpose for which a gas company has been created is to make and sell gas and operate gas works, the purchase of stock in other gas companies is not necessary to accomplish such purpose." The court further said, that since the power to purchase outside stocks could not be implied from the power to operate gas works and make and sell gas, a company could not exercise this power unless expressly authorized by legislative grant. After referring to authorities the court said: "It has been held in many cases that 'in the United States corporations cannot purchase or hold or deal in the stocks of other corporations unless expressly authorized to do so by law,' and that 'one corporation can not become the owner of any portion of the capital stock of another corporation unless authority to become such is clearly conferred by statute.' "

The object of the incorporation of the appellant was "to furnish and sell gas, electricity and other lighting and heating substances for light, heat and power purposes, for public and private uses." The powers of the appellant are restricted to such as are necessary and requisite to carry into effect that object. The general Incorporation act, under which appellant was organized, did not confer upon it the power to purchase stock in other corporations, and as it was not necessary for it to purchase stock in other corporations to carry into effect the object of its formation, such

power was not given to it by implication. The effect of the transfer of the capital stock of the Bloomington Gas Light and Coke Company and the Citizens' Gas Light and Heating Company to the First Trust and Savings Bank of Chicago, as trustee, for the use and benefit of appellant or its stockholders, and the sale of all the property, rights and street easements to appellant, was to destroy the power of those companies to engage in the manufacture, sale and distribution of gas, heat and light in the city of Bloomington. By that transaction the only competitors of appellant were destroyed and a monopoly of the gas business was secured to appellant. This is clearly in violation of law and contrary to public policy. In *People* v. *Chicago Gas Trust Co. supra,* it was said (p. 293): "The business of manufacturing and distributing illuminating gas by means of pipes laid in the streets of a city is a business of a public character. It is the exercise of a franchise belonging to the State. The services rendered and to be rendered for such a grant are of a public nature. Companies engaged in such business owe a duty to the public. Any unreasonable restraint upon the performance of such duty is prejudicial to the public interest and in contravention of public policy. (Citing cases.) Whatever tends to prevent competition between those engaged in a public employment or business impressed with a public character is opposed to public policy and therefore unlawful. Whatever tends to create a monopoly is unlawful, as being contrary to public policy." If the purchase of a majority of the capital stock of competing corporations would create a monopoly, certainly the purchase of all the capital stock of such corporations would have a like effect. Whatever the purpose of the transfer to appellant of the property, rights and street easements, and to the First Trust and Savings Bank of the capital stock of the gas companies then engaged in business, the effect was to destroy competition and to secure to appellant absolute control of the gas business in the city of Bloom-

ington.  The law looks to the effect and not to the purpose.
Neither will it "sustain a transaction illegal in character,
accomplished by indirection, when it could not be done if
the methods were direct."  *Dunbar* v. *American Telephone
Co. supra.*

Appellant contends that its purchase of the stock of the
other corporations and exercise of the rights granted them
are authorized by the act of 1897, entitled "An act in re-
lation to gas companies."  (Hurd's Stat. 1909, p. 604.)
That act was adopted after the decision in *People* v. *Chi-
cago Gas Trust Co. supra,* and was evidently intended to
authorize acts held in that case to be illegal, in the absence
of express legislative authority.  The first and second sec-
tions of the act are as follows:

"Sec. 1. .That all gas companies now organized, or here-
after to be organized in this State, are hereby authorized
and empowered to sell, transfer and convey or lease their
real and personal property, rights, franchises and privileges,
in whole or in part, to any other gas company doing busi-
ness in the same city, town or village, and such other gas
company is authorized to purchase or lease and to hold and
enjoy said property. '

"Sec. 2. It shall be lawful for any gas companies, now
organized or hereafter to be organized in this State, doing
business in the same city, town or village, to consolidate
and merge into a single corporation, which shall be one of
said merging and consolidating corporations, by complying
with the provisions of this act, as hereinafter specified."

Other sections relate to methods of perfecting the sale
or consolidation of companies and the effect thereof.  Sec-
tion 11 is as follows:

"Sec. 11. Any corporation purchasing or leasing the
property of any company or companies, or into which any
company or companies are consolidated and merged under
this act, shall be, at the time of availing itself of or ac-
cepting the benefits of this act, in the actual business of

furnishing gas to consumers; and shall be subject to the following provisions: Such corporation shall not increase the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease, or such consolidation and merger. Such corporation shall furnish gas to consumers as good in quality as it furnished previous to such purchase or lease, or such consolidation and merger."

It will be seen that in order to authorize a corporation to purchase or lease the property of another, the statute requires that it shall be, at the time of availing itself of or accepting the benefits of this act, in the actual business of furnishing gas to consumers. Counsel for appellant suggest that it does not appear appellant was not so engaged at the time of the conveyance to it. There is no averment in any plea that at the time of its purchase from the two old corporations appellant was in the actual business of furnishing gas to consumers, nor is there any averment that it had any license or permit from the city to do so. It bases its right solely upon the grants of the street rights and privileges of the two older corporations. Pleadings will be construed strictly against the pleader. If it was sought to justify under the provisions of the act of 1897, the pleas should show appellant was in a position, at the time, to avail itself of the benefits of the act, and failing to do so, the pleas will be considered as defective in a proceeding of this character as if they expressly stated appellant. was not at the time engaged in the business of furnishing gas to consumers. Inferentially it appears that appellant was not, at the time of its purchase, engaged in furnishing gas to consumers. The purchase was made four days after appellant was incorporated. No claim is made that it obtained a license from the city to engage in business, and we must assume that it did not. This suit is an attack upon its authority to conduct the business of manufacturing, distributing and selling gas and electricity in the city, and its

sole justification is that it acquired that right by grant from other companies. It will not be presumed it engaged in the business before it claims it acquired the right to do so.

Counsel in an elaborate argument contend that the word "shall," in section 11, should be read "may," and seek to show that it would be much better for the public to so construe the statute. We cannot agree that it would be permissible to hold that the word "shall" should be read "may." To give the act the construction contended for would be equivalent to removing all restrictions from the purchasing or leasing corporation. To say that the provision of the act can be availed of by any corporation that may or may not be at the time engaged in the business of furnishing gas would render the provision meaningless. If the legislature had intended that any corporation or any gas corporation, whether engaged in business or not, could avail itself of the benefits of the act, there could have been no object or purpose in using the language employed. We can not assume the language was not intended to mean anything. Presumably it expressed the legislative mind, and that was, that no corporation could avail itself of the provisions of the act that was not, at the time of doing so, engaged in the business of furnishing gas. The wisdom of the restriction was a legislative—not a judicial—question, and the law-making power having placed the restriction in the law, whether it be thought wise or not, courts cannot read it out. It follows that if appellant's right to use the streets of the city of Bloomington depends upon the authority of the Gas act of 1897 it cannot be sustained, for it was not at the time of the purchase engaged in the actual business of furnishing gas, and therefore could not avail itself of the provisions of the act.

Appellant further contends that the city of Bloomington has by various acts, resolutions and ordinances recognized appellant as a corporation authorized to engage in the gas and electric business in said city and is now estopped from

questioning its right to do so. The principal acts relied on in the pleas as grounds of estoppel are: (1) On August 18, 1900, the city council passed an ordinance extending the electric light grant of appellant, "assignee of the Citizens' Gas Light and Heating Company, its successors and assigns," from 1909 to 1935; (2) on November 24, 1900, the city ordered appellant to place its electric wires under ground, which was done at an expense of $50,000; (3) on October 13, 1905, appellant informed the city that it was then engaged in overhauling its mains and service throughout the city and asked permission to re-lay the pavements and re-fill the trenches itself, which the city refused to grant but re-filled the trenches under the supervision of the city engineer, at appellant's expense; (4) on February 9, 1906, the city council appointed a special committee to look into the quality of gas furnished by appellant and the price charged for same, and on March 16, 1906, the special committee reported to the city council "that the new company [appellant] will practically re-build the entire plant, discarding nearly all the old machinery and apparatus and installing new in its place, which will increase the capacity and efficiency of the works, as we are informed, and will give us an entirely up-to-date gas plant;" that another report was made at a later date, stating that "all the improvements to the gas plant, as outlined in our other report, are now completed and in use, except the machine known as the governor," and that this machine was expected in a few days, and when installed the committee was assured there would be no cause for complaint of poor or unequal pressure; (5) that at various times the city council had directed appellant to put in passable condition certain ditches and repair plank crossings; (6) that appellant had paid taxes on its property to the city; (7) that appellant had furnished gas, light and heat to the city, for which the city had paid; (8) that the city had granted to appellant the right to lay gas mains,

and required it to enter into an agreement with the city to save the city from all damages occasioned by such work; and (9) that in August, 1899, appellant borrowed $400,000, for which it issued bonds secured by trust deed on its plant and property, and in 1905, for the purpose of paying off said bonds and securing funds for the improvement of its plant and the construction of new works, it issued bonds in the sum of $750,000, secured by trust deed, duly recorded, on the corporate property, and sold said bonds to parties who purchased them in good faith, for a valuable consideration.

Appellee insists that this is a proceeding by the State questioning the right of appellant to exercise a franchise belonging to the State, and therefore the law of estoppel does not apply, (1) because that doctrine cannot be invoked against the State; and (2) the State cannot be estopped by the action or non-action of the city. It is true, this suit was begun in the name of the People, but it was brought on the relation of the city attorney of the city of Bloomington, and the affidavit of the relator filed in support of the petition for leave to file the information states that the suit was ordered begun by the city council of the city of Bloomington. The State granted appellant the authority to exercise its franchise in the city of Bloomington, by and with the consent of the city. The grant from the State was subject to the granting of permission by the municipal authorities. The State, however, was not particularly interested whether the city granted the permission by ordinance, or whether it suffered appellant to exercise the franchise granted it by the State without adopting an ordinance licensing it to do so. So far as that question is concerned, therefore, the city is the real party in interest, and the suit is to be so regarded and treated. (*People* v. *Central Union Telephone Co.* 232 Ill. 260; *Chicago and Northwestern Railway Co.* v. *People,* 91 id. 251.) That the doctrine of

estoppel *in pais* may in a proper case be invoked against a
city has been held in *Chicago, Rock Island and Pacific Rail-
road Co.* v. *City of Joliet,* 79 Ill. 25, *Chicago and North-
western Railway Co.* v. *People, supra, Martel* v. *City of
East St. Louis,* 94 Ill. 67, *City of Chicago* v. *Union Stock
Yards and Transit Co.* 164 id. 224, *Village of Winnetka* v.
*Chicago and Milwaukee Electric Railway Co.* 204 id. 297,
*People* v. *City of Rock Island,* 215 id. 488, *Sanitary Dis-
trict* v. *Metropolitan West Side Elevated Railway Co.* 241
id. 622, and *City of Chicago* v. *Pittsburg, Cincinnati, Chi-
cago and St. Louis Railway Co.* 244 id. 220. We are of
opinion the pleas of estoppel should have been sustained.
A different rule might apply if the acts of appellant were
such as the city of Bloomington had no power to authorize.
Here the legality of appellant's organization as a corpora-
tion is not challenged. The city had the legal right to grant
it permission to do just what it has done and is doing in
the matter of manufacturing and distributing gas and elec-
tric current and to use the streets for that purpose. It ap-
pears from the averments of the pleas of estoppel that for
ten years the city treated appellant as if it were in the
lawful exercise of its franchise, and induced and permitted
appellant to expend large sums of money in an endeavor to
comply with requirements of the municipal authorities, a
large part of which would be a total loss if appellant may
now be ousted from continuing the exercise of its franchise
because permission was not granted it to do so by ordi-
nance. This would be contrary to the well settled law and
to the principles of justice and fair dealing. To hold the
city estopped will not have the effect, as suggested by coun-
sel for the city, of giving appellant an exclusive or irrevo-
cable right or privilege to use the streets, but in the conduct
and management of its business it will still be subject to
the constitution and laws and the control of the city council
acting thereunder.

We are of opinion the demurrers were properly sustained to all the pleas except those of estoppel. As to those pleas the demurrers should have been overruled. For this error the judgment of the circuit court will be reversed and the cause remanded, with directions to overrule the demurrer to the pleas of estoppel.

*Reversed and remanded, with directions.*