Argued March 22, modified April 3, 1917.

# WESTERN UNION TEL. CO. *v.* HURLBURT,
## SHERIFF.

(163 Pac. 1170.)

**Corporations—"Franchise"—Primary and Secondary Franchises.**

1. A "franchise" is a right or privilege granted a person or corporation by the government, or a state, either directly or indirectly, the right granted to an artificial person to be a corporation being known as its primary franchise, and the right conferred on the corporation to transact a particular business being known as its secondary franchise.

**Taxation—Franchises—Acts of Congress—City Ordinance.**

2. Where a telegraph company organized under the laws of New York and having the right under Act Cong. July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. Stats. 1913, §§ 10072–10077), to construct, maintain and operate its lines along military or post roads of the United States, accepted an ordinance of the City of Portland enacted under the authority of Portland Charter (Laws 1891, p. 807), Section 37, subdivision 34, empowering the city to authorize and regulate the erection, maintenance, and removal of telegraph poles, wires, etc., upon or over the streets, alleys, or public grounds of the city, the ordinance granted the company a secondary special franchise to operate on the city streets distinct from its secondary franchise under the act of Congress, and such municipal franchise alone was intended to be assessed, where the tax-roll described the property as the franchise of the corporation as granted by the ordinance.

**Taxation—Property Taxable—Franchise of Telegraph Company.**

3. Section 3037, B. & C. Comp., provides that all taxes shall be assessed on property in equal and ratable proportion and all property, real and personal, not expressly exempted shall be subject to taxation. Section 3542, L. O. L., enacted under the initiative power in 1906, provides that every telegraph company doing business in the state shall pay a license of 2 per cent on the gross receipts received within the state, but does not provide that the license shall be in lieu of any or all other taxes. Section 3552, L. O. L., enacted February 28, 1907 (Laws 1907, p. 497), but not to go into effect until March 1, 1908, provides that the terms "land," "real estate," and "real property" shall be construed to include the land itself, and all appurtenances and all franchises and privieges granted to any person or corporation other than the right to be a corporation. *Held,* that prior to 1908, the franchise of a telegraph company given by a city ordinance to maintain its poles and wires on the city streets was not taxable, but such franchise was taxable under that act for the year 1908 and subsequent years.

**Taxation—Situs for Taxation—Franchise—Foreign Corporation.**

4. A franchise to maintain telegraph lines along city streets granted by a city ordinance to a foreign corporation can be treated

as having a situs for taxation within the county in which the city granting it was situated.

**Commerce—Taxation—Property Taxable—Telegraph Franchise—Interstate Commerce—Operation Under Act of Congress.**

5. A telegraph company engaged in interstate commerce and having a franchise under Act Cong. July 24, 1866, to maintain its lines along military and post roads may nevertheless be taxed on its municipal franchise to maintain lines along a city's streets.

**Taxation—Assessment—Valuation of Franchise—Right to Object.**

6. A telegraph company cannot object in a suit to restrain collection of a tax on its franchise that the valuation was arbitrarily fixed, where it did not seek a reduction of the assessment under the provisions of Sections 3609, 3613, L. O. L.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is a suit by the Western Union Telegraph Company against T. M. Hurlburt to enjoin the collection of an alleged tax. The cause being at issue was tried, and findings of fact were made to the effect that the plaintiff is a corporation and was organized under the laws of the State of New York as a common carrier to transport messages by electric wires, whereby signals are used to represent the letters of the alphabet; that on June 8, 1867, the plaintiff duly accepted the provisions of the act of Congress of July 24, 1866 (U. S. Rev. Stats. § 5263 et seq., U. S. Comp. Stats. 1913, § 10,072 et seq., 7 Fed. Stats. Ann., p. 205), and pursuant thereto constructed, maintained, and operated upon public roads and highways in every state, territory, and district in the United States and in Portland, Oregon, telegraph lines for the dispatch of domestic and interstate business; that in each of the years 1906, 1907, 1908, and 1909, the plaintiff's entire tangible property in Multnomah County, Oregon, was assessed as follows: "Machinery and equipment, $3,900, money, notes, and accounts, $1,500, furniture, $600, lines of wire, $22,395,—amounting to $28,395,"

and all taxes levied thereon have been paid; that on November 7, 1893, the provisions of ordinance No. 8419 of the City of Portland were accepted by the plaintiff, whereby it was authorized to use the streets, alleys, and public places of that municipality in which to set up its telegraph poles and to string thereon wires necessary for the transaction of its business; that complying with the provisions of ordinance No. 11,784 of that city, approved September 27, 1900, the plaintiff paid quarterly a license tax of $75; that notwithstanding such payments the assessor of Multnomah County, during each of the years last mentioned, pretended to assess to the plaintiff, "All franchise, right, privilege, and grant, as granted by ordinance No. 8,419, City of Portland," and arbitrarily placed thereon an annual valuation of $15,000; that the County Court of that county annually claimed to levy on such assessment for state, county, and other general purposes taxes which with the penalties thereon are for the years 1906, $403, for 1907, $384.40, for 1908, $435, and for 1909, $359.10, amounting to $1,531.50; that there were attached to the tax-rolls warrants, which were directed and delivered to the defendant as sheriff and *ex-officio* tax collector of that county, commanding him to enforce the payment of such sums by levying upon and selling the plaintiff's franchise and other property. As conclusions of law the court further found that pursuant to the act of Congress of July 24, 1866, the plaintiff had constructed, maintained, and operated its telegraph poles and wires in the City of Portland; that during the years particularly designated the attempted assessment and taxation of the plaintiff's franchise was unconstitutional and void, and that the prayer of the complaint should be granted.   A decree having

been rendered in accordance with these findings, the defendant appeals.                    MODIFIED.

For appellant there was a brief over the names of *Mr. Samuel H. Pierce* and *Mr. Walter H. Evans,* District Attorney, with an oral argument by *Mr. Pierce.*

For respondent there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Lusk.*

MR. JUSTICE MOORE delivered the opinion of the court.

The final determination brought up for review was predicated upon the theory that the tax complained of was attempted to be levied upon the federal franchise granted to the plaintiff, that the exaction, if enforced, would interfere with the right to transact interstate telegraphic business, and for that reason the pecuniary contribution to the public burden so demanded violated the commerce clause of the Constitution of the United States. A franchise is a right or privilege granted to a person or corporation by the government or a state either directly or indirectly: 3 Words and Phrases, 2931; *Oregon* v. *Portland Gen. Elec. Co.,* 52 Or. 502, 526 (95 Pac. 722, 98 Pac. 160); *Noe* v. *Mayor etc.,* 128 Tenn. 350 (161 S. W. 485, Ann. Cas. 1915C, 241); *People ex rel.* v. *Union Gas etc. Co.,* 254 Ill. 395 (98 N. E. 768, Ann. Cas. 1916B, 201). The right thus granted to an artificial person or legal entity to be a corporation is known as its primary franchise. The authority so conferred upon the corporation by some sovereign power to transact a particular business or to do a specified act is designated as its secondary franchise: Joyce, Franchises, § 8; Jones, Telegraph and Telephone Companies, § 45.

2. The plaintiff's primary franchise, or its right to be a corporation, was granted by the State of New York. A part of its secondary franchise, or the right to construct, maintain, and operate telegraph lines over and along the military or post roads of the United States, was granted by the general government. Subdivision 34 of Section 37 of Chapter V of the charter of the City of Portland, which clause was in force when ordinance No. 8419 of that municipality was enacted, empowered its council—

"to allow, authorize, provide for, and regulate the erection, maintenance and removal of telegraph * * poles, wires and cables * * upon or over the streets, alleys or public parks and public grounds of said city": Laws 1891, p. 807.

It will thus be noted that by an express delegation of legislative power, the right to place in the streets and alleys of Portland, Oregon, poles and to suspend thereon the necessary telegraph wires to be used to transmit local and interstate messages was granted to the plaintiff by authority of the state of Oregon, and thereby became another secondary special franchise: *Portland* v. *Portland Ry. L. & P. Co.*, 80 Or. 271 (156 Pac. 1058). In *People ex rel.* v. *Union Gas etc. Co.*, 254 Ill. 395 (98 N. E. 768, Ann. Cas. 1916B, 201), it was ruled that permission given by a city ordinance for the exercise of a corporate franchise within the city was a "license" and not a franchise. In the notes to that case, at page 211, in citing authorities maintaining a different view, it is said:

"In many jurisdictions a grant by a municipality to a corporation of the right to use the streets for water, gas, transportation, or other public service purpose, has been held to constitute a franchise and not a mere license."

It is believed the excerpt so repeated expresses the correct rule to be applied in such cases, and by invoking the maxim *"qui facit per alium facit per se"* it necessarily follows that a permission given by municipal ordinance to a private corporation to exercise some special privilege within the city, pursuant to an express delegation of legislative authority, is a grant by the state whereby the right conferred becomes a franchise and not a license.

That the assessor of Multnomah County undertook to appraise the secondary special franchise granted by the municipal ordinance as an agent of the state, and not the federal franchise given by the act of Congress, is evidenced by the description of the property set forth in the tax-roll, as "All franchise, right, privilege, and grant, as granted by ordinance No. 8419, City of Portland."

3. The questions to be considered are whether such property when used as a means of transporting local and interstate telegraphic messages can be legally taxed, and if so, has the burden been properly imposed? Considering these inquiries in inverse order the statute in force until 1907 contained a clause as follows:

"All taxes for the support of the government of this state shall be assessed on property in equal and ratable proportion, and all property, real and personal, within this state, not expressly exempted therefrom, shall be subject to taxation in the manner provided by law": B. & C. Comp., § 3037.

By an exercise of the initiative power a statute was duly enacted June 4, 1906, and went into effect twenty-one days thereafter. The act provides:

"That * * every telegraph company or corporation doing business in this state, shall pay to the state of Oregon a license of two (2) per centum upon the gross receipts of such company or corporation received in

this state; which license shall be paid annually by such company or corporation to the treasurer of this state"; Section 3540, L. O. L.

"That any person or persons, joint stock company, or corporation, wherever organized or incorporated when engaged in the business of transporting to, from, through, or in this state, telegraph messages, shall be deemed to be a telegraph company": Section 3542, L. O. L.

This act, however, does not provide that the license thus exacted shall be in lieu of any or all other taxes.

The law regulating assessments and taxation was amended February 28, 1907, and the material parts thereof which were in force when the taxes herein were undertaken to be levied, read:

"The terms land, real estate, and real property, as used in this act shall be construed to include the land itself * * and all rights and privileges thereto belonging or in any wise appertaining; and all franchises and privileges granted by or pursuant to any law of this state, or municipal ordinance or resolution, owned or used by any person or corporation, other than the right to be a corporation": Section 3552, L. O. L.

That statute did not go into effect until 1908: Gen. Laws 1907, p. 497. Prior to the year last named the taxes attempted to be levied upon the plaintiff's secondary special franchise, to put up and maintain in the highways of Portland, Oregon, poles and wires, seem to have been based upon an assessment of the municipal grant of such special privilege, which, under the general legal principle applicable to such cases, was treated as an incorporeal hereditament: *Oregon v. Portland Elec. Co.,* 52 Or. 502, 526 (95 Pac. 722, 98 Pac. 160); *Enfield T. B. Co.* v. *Hartford etc. R. Co.,* 17 Conn. 40 (42 Am. Dec. 716, 722); *Gibbs* v. *Drew,* 16 Fla. 147 (26 Am. Rep. 700, 701).

"Corporate franchises," says Mr. Justice CLIFFORD, in *Society for Savings* v. *Coite,* 6 Wall. 594 (18 L. Ed. 897), "are legal estates vested in the corporation itself as soon as it is *in esse.*"

In a note to the case of *Louisville T. W. Co.* v. *Commonwealth,* 106 Ky. 165 (49 S. W. 1069, 57 L. R. A. 33), it is observed:

"There is almost a consensus of opinion that corporate franchises are property"—citing in support thereof many cases.

At page 38 of such notes it is further remarked:

"In general corporate franchises are taxable. * * As much so as any other property. * * Corporate franchises are taxable under a statute requiring all property in the state not exempt to be taxed. * * And notwithstanding no method of ascertaining their value or levying the tax thereon has been prescribed by the legislature."

At page 39 of the notes referred to, however, it is said:

"When the taxing statutes do not include corporate franchises among the subjects of taxation, a tax thereon is void."

If the legal principle set forth in the latter excerpt states the correct rule, the tax attempted to be levied upon the plaintiff's secondary special franchise for the years 1906 and 1907, amounting with the penalties thereon to $787.40, are invalid, for the statute first declaring that franchises granted to or used by any corporation in this state should be classed under the terms land, real estate and real property (Section 3552, L. O. L.), did not go into effect until March 1, 1908, when assessments for that year were required to be made: Laws 1907, p. 497. The case of *Oregon* v. *Pacific States Tel. & Tel. Co.,* 53 Or. 162 (99 Pac. 427), is not determinative of this suit, for that cause was an action

to recover 2 per cent of the defendant's gross receipts for the year 1906, under the provisions of the initiative act adopted June 4, 1906: Section 3540, L. O. L. In referring to the decision rendered in that case Mr. Justice HARRIS, in *Portland* v. *Portland Ry. L. & P. Co.,* 80 Or. 271, 302 (156 Pac. 1058), says:

"Notwithstanding the language employed in *Oregon* v. *Pacific States Tel. and Tel. Co.,* 53 Or. 162 (99 Pac. 427), the tax provided for by the state law was not necessarily laid on franchises."

It is believed that since the act of February 28, 1907, which first classified a franchise as real property and subject to assessment and taxation, did not go into effect until March 1, 1908, that statute in respect to such classification was not the recognition of a pre-existing right in this state, but the avowal of another division of property; and this being so the taxes attempted to be levied upon the plaintiff's special franchise for the years 1906 and 1907 are void.

4. The burdens imposed, however, for the years 1908 and 1909 are predicated upon an appraisement made by the county assessor of Multnomah County, Oregon, in order to raise revenue for governmental purposes, and the *ad valorem* tax based thereon is a legal charge against the plaintiff's special franchise granted by the City of Portland pursuant to legislative authority, which right is considered and treated as properly having a situs in that county: *Portland* v. *Portland Ry. L. & P. Co.,* 80 Or. 271, 288 (156 Pac. 1058).

5. Notwithstanding the plaintiff is engaged in interstate commerce its property within the State of Oregon, including its secondary municipal special franchise, is subject to assessment and taxation: *Society for Savings* v. *Coite,* 6 Wall. 594, 606 (18 L. Ed. 897). In *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S.

530, 548 (31 L. Ed. 790, 8 Sup. Ct. Rep. 861), Mr. Justice MILLER referring to the act of Congress of July 24, 1866, says:

"This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the Federal government, carries with it any exemption from the ordinary burdens of taxation. * * It never could have been intended by the Congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein, to establish the proposition that such company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support."

So, too, in *Atlantic etc. Co.* v. *Philadelphia*, 190 U. S. 160, 163 (47 L. Ed. 995, 23 Sup. Ct. Rep. 817), Mr. Justice BREWER, discussing this subject, remarks:

"The franchise of a corporation, although that franchise is the business of interstate commerce, is, as a part of its property, subject to state taxation, providing at least the franchise is not derived from the United States."

In *San Francisco* v. *Western Union Tel. Co.*, 96 Cal. 140 (31 Pac. 10, 17 L. R. A. 301), the head-note reads:

"A state tax on the franchise of a telegraph company which has accepted the provisions of the Act of Congress of July 24, 1866, providing for aid in the construction of telegraph lines and for securing to the government the use of the same for postal, military, and other purposes, is void as an attempt to tax an instrument of the general government."

In deciding that case Mr. Justice McFARLAND, referring to the defendant, quotes from the complaint as follows:

" 'It is not organized under the laws of the state of California, and has derived no franchise therefrom.' "

In *California* v. *Central P. R. Co.,* 127 U. S. 1, 40 (32 L. Ed. 150, 8 Sup. Ct. Rep. 1073), an attempt was made to tax a federal franchise and in deciding the case Mr. Justice BRADLEY, speaking for the court, says:

"Assuming, then, that the Central Pacific Railroad Company has received the important franchise referred to by grant of the United States, the question arises whether they are legitimate subjects of taxation by the state. They were granted to the company for national purposes and to subserve national ends. It seems very clear that the state of California can neither take them away, nor destroy nor abridge them, nor cripple them by onerous burdens. Can it tax them? It may undoubtedly tax outside visible property of the company, situated within the state. That is a different thing. But may it tax franchises which are the grant of the United States? In our judgment it cannot."

The reference in that case to "visible property" was mere *obiter,* since that question was not involved.

6. The valuation of the plaintiff's municipal special franchise as fixed by the assessor was arbitrary and not dependent upon any comparison whatever with other property. But however this may be, the plaintiff could have petitioned the county board of equalization for the reduction of its assessment of such franchise: Section 3609, L. O. L. If the relief so sought had been denied, an appeal from such supposed action could have been taken to the Circuit Court for Multnomah County: Section 3613, L. O. L. Not having done so, it is now too late to diminish the valuation so placed upon the plaintiff's property. A statute, enacted February 24, 1909, created a board of state tax commissioners, and authorized that body to assess corporate franchises, but the performance of that duty

was postponed until March 1, 1910 (Laws 1909, Chap. 218, § 48), so that the appraisement herein for the year 1909 could not have been made by such board, and for that reason the assessment was fixed by the assessor of Multnomah County. The tax and the penalties thereon for the years 1908 and 1909, amounting to $794.10, will remain as charges against the plaintiff, which sum may be collected by seizure and sale of its property.

The decree will, therefore, be modified as to the taxes last referred to, but affirmed as to the taxes for the years 1906 and 1907.    MODIFIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.