Argued November 30, 1915, affirmed April 25, 1916.

# PORTLAND v. PORTLAND RY., L. & P. CO.*

### (156 Pac. 1058.)

**Pleading—Demurrer—Admissions.**

1. In an action to recover a tax, a demurrer to defendant's answer admitted that all the affirmative averments in the answer were true.

**Licenses—Nature of Tax—Franchise—Rental or "Tax."**

2. Under the grant of a franchise to a private corporation to erect and maintain poles and wires in a city's streets for the distribution and sale of electricity, requiring the corporation to pay to the city 2½ per cent of the gross receipts from its business done in the city, the 2½ per cent was the payment of a rental for the use of the streets, rather than a "tax."

> [As to taxation of licenses, see note in 129 Am. St. Rep. 249. As to taxation of franchises, see note in 131 Am. St. Rep. 862.]

**Licenses — Municipal Corporations — Taxing Power — Exemptions or Surrender.**

3. Under the Portland City Charter (Sp. Laws 1903, p. 29), Section 73, subdivision 21, empowering it to grant licenses to raise revenue, or for regulation, or both, the city had no inherent power to exempt property from taxation, or to exempt an electric company from the payment of any other "license or tax or charge on the business or occupation"; and, having such police power, and even if it had been given the right to tax, it could not lawfully exempt any person or corporation from the payment of any other "license or tax or charge on the business or corporation."

**Constitutional Law—Equal Protection of the Law—Electric Power Company.**

4. A railway and power company, granted a franchise by the City of Portland, was not denied the equal protection of the law guaranteed by Constitution of the United States, Amendment 14, Section 1, merely because it had made contracts to furnish electricity at prescribed rates, and a purported revenue or license tax would diminish its profits thereon, since its contracts must be entered into with full knowledge that the city might at any time exercise its powers of taxation.

**Constitutional Law—Licenses—Obligation of Contracts—License Tax.**

5. The obligations of such contracts were not impaired, in violation of Constitution of the United States, Article I, Section 10, by the

---

*As to power of municipality to exempt property from taxation, see notes in 15 L. R. A. 860; 29 L. R. A. (N. S.) 183.

Generally, as to corporate taxation in the United States as affected by the contract clause in the federal Constitution, see extensive note in 60 L. R. A. 33.

As to taxation of business or occupation of a public service corporation, and of its franchise or right to occupy the streets, as double taxation, see note in 28 L. R. A. (N. S.) 22.      REPORTER.

collection of taxes imposed by a city ordinance subsequent to the making thereof, in a purported exercise of the city's power to impose a revenue or license tax, which did not strike at the terms of the contracts, but preserved them and left them enforceable, the same as before, by both of the parties.

### Taxation—Property Tax—Validity.

6. Where an *ad valorem* tax is levied on property, in the absence of statutory, charter or constitutional provisions, the only limitations to the exercise of power to tax are the necessities of the public treasury.

### Licenses—Occupation Tax—Validity—Reasonableness.

7. Where a municipality is authorized to license occupations and businesses either for regulation or for revenue, the power cannot be used unreasonably, nor can the tax be fixed so high as to be practically confiscatory, or prohibitive of an ordinary lawful business.

### Municipal Corporations—Power to Tax Property—"Assess"—Constitutional and Statutory Provisions.

8. Article I, Section 32, of the Constitution requires that all taxation shall be equal and uniform, and Article IX, Section 1, declares that the legislative assembly shall provide by law for uniform and equal rate of assessment and taxation, and prescribe regulations to secure a just valuation of real and personal property for taxation. Laws of 1907, page 485, enacted to provide a more equitable system for assessing property by Section 2 (Section 3552, L. O. L.) defined property subject to taxation, and by Section 18 (Section 3586, L. O. L.) defined the duty of the county assessor; and Laws of 1907, page 458, Section 15 (Section 3670, L. O. L.), provided that every tax levied by an incorporated city should be levied on property therein assessed upon the valuation shown by the assessment-roll and filed by the county assessor; and Laws of 1909, page 345 (Sections 3614–3660, L. O. L.), created a board of state taxing commissioners, with general supervision of the system of public taxes throughout the state provided for an annual assessment of the property of electric companies doing business in more than one county, and defined property to include franchises. The legislative charter of the City of Portland (Sp. Laws 1903, p. 3) by Section 3 vested the city with general powers, by Section 73, subdivision 21, with the power to grant license to raise revenue or for regulation, and by Section 114 authorized it to assess all property not exempt from taxation according to an estimate made under Section 285. An ordinance required every person or corporation furnishing electricity to pay a license of 3 per cent of its gross receipts. *Held,* that the power to "assess" did not mean to value property for taxation, but only to levy a tax, and that the ordinance, if construed as imposing a tax on a franchise as property, or on earnings as property, was void.

### Licenses—Power to Tax—License or Occupation Tax—Charter Provisions.

9. Under the legislative charter of the City of Portland (Sp. Laws 1903, page 29, Section 73, subdivision 21), empowering the council to grant licenses to raise revenue, or to regulate and to fix by ordinance the amount to be paid, and providing for the revocation of licenses, and that no license should be granted to continue more than one year,

considered with the more general grants of power by Sections 3 and 74, an ordinance to provide additional revenue requiring every person or corporation furnishing electricity for commercial purposes to pay a license of 3 per cent of its gross receipts on its business in the city, in addition to a quarterly license tax without issuing any license or prohibiting anything, and making a failure to pay the tax create only a debt, was not an exercise of the power "to grant license," and hence was without charter authority.

### Municipal Corporations—Powers—Taxation.

10. A city possesses no inherent power to tax, and the grant relied upon must be evident and unmistakable, and all doubts will be resolved against its exercise and in favor of the taxpayers.

### Licenses—Double Taxation—Corporations.

11. A corporation may be simultaneously compelled to pay an *ad valorem* or property tax on all property owned by it, including franchises when they are considered as property, a license or privilege tax on its business, and a fee to the state for its franchise or right to do business as a corporation.

### Licenses—Amount of Tax—Ad Valorem Tax.

12. A property tax must be an *ad valorem* tax, because it is a direct tax on property; but there is no constitutional requirement that a business or occupation tax shall be so measured.

### Licenses—Amount of Tax—License Tax—Percentage of Receipts.

13. A per centum of the gross receipts of a business may be taken as the measure of the amount to be paid for the privilege of actually transacting a business, which method of ascertaining the amount of a license tax, whether on a business or the privilege of doing business in a corporate capacity, is not necessarily a tax on the earnings.

### Licenses—"Franchise."

14. The term "franchise," when associated with corporations, has various meanings. The franchise "to be" may refer to the grant of corporate life, and may relate to the privilege of continuing to exist as a corporation; while the franchise "to do" may refer to the right to do business generally as a corporation, or signify the corporate power to transact the particular business enumerated in the articles of incorporation.

### Licenses—Corporations—Franchise.

15. The states may impose license or privilege taxes on corporate franchises "to be" and on corporate franchises "to do."

### Constitutional Law—Presumptions as to Validity—Double Taxation.

16. The presumption is against a legislative intention to impose double taxation.

### Constitutional Law—Construction in Favor of Constitutionality.

17. Where a statute is open to two constructions, one of which will render it unreasonable and unconstitutional, while the other will harmonize with reason, justice and the constitutional provisions, the latter construction will be adopted.

**Statutes—Repeal by Implication.**

18. Repeals by implication are not favored.

**Statutes—Construction—Legislative Designation.**

19. While not absolutely controlling, the legislative designation is an important factor in determining the character of a tax imposed.

**Licenses—Power to License.**

20. The exercise of the power to license a business or occupation involves the granting of permission to do something which could not be lawfully done without such permission.

From Multnomah: GEORGE N. DAVIS, Judge.

In Banc. Statement by MR. JUSTICE HARRIS.

The plaintiff City of Portland, a municipal corporation, will be called the city, or the plaintiff, and the defendant Portland Railway, Light & Power Company, a private corporation, will be referred to as the company, or the defendant. All the facts appear in a complaint and answer. The city demurred to the answer; the court overruled the demurrer; the city declined to plead further; the court then entered a judgment awarding to defendant its costs and disbursements; and consequently on this appeal, which is prosecuted by the city, all the affirmative allegations of the answer must be deemed to be true.

The company is engaged in the business of selling electricity for lighting, heating and power purposes in Portland and elsewhere. The city is attempting to recover from the company 3 per centum of the gross receipts from business done in Portland, together with a penalty of 10 per centum by virtue of an ordinance enacted by the legal voters of the city at a general election held on June 5, 1911. The litigation involves the validity of the ordinance which is numbered 23,566 and is entitled:

"An ordinance to provide additional revenue for the City of Portland; to levy a license on the gross receipts of persons and corporations engaged in the business of

selling electricity, or electric current, for lighting, heat, power or other commercial purposes within the City of Portland; defining the manner of ascertaining the nature and extent of such gross receipts; defining a person and corporation within the meaning of this ordinance, and providing a penalty for the violation of the provisions of this ordinance."

The ordinance is here reproduced in full and reads thus:

"Section 1. The word 'person' when used in this ordinance, includes an individual or copartnership. The word 'corporation' when used in this ordinance, includes every corporation, company, association, or joint-stock company, other than an individual or copartnership.

"Sec. 2. Every person, or corporation, engaged in the business of selling electricity, or electric current, for lighting, heating, power or other commercial purposes within the City of Portland, shall pay to the City of Portland, a license of three (3) per centum of the gross receipts of such person, or corporation received upon its business within the City of Portland, which license shall be paid annually by said person, or corporation, to the treasurer of the City of Portland on the first day of March of each year for the preceding year ending December 31st: Provided, that the payment to be made as required by this section and the statement to be made as required by Section 3 hereof on March 1, 1912, shall be upon and cover and embrace the gross receipts of any such person, or corporation, between the date this ordinance takes effect and December 31, 1911.

"Sec. 3. For the purpose of ascertaining the amount of the license to be paid as required by this ordinance, it shall be the duty of any such person, and of the president and secretary and treasurer of any such corporation, or such of them as shall reside in this state, or if neither of said officers reside in this state, then the general manager or other officer or agent of such corporation, having general control,

management or supervision of its business within this state, to transmit a statement, under oath, of the gross receipts of such person, or corporation from business transacted within the City of Portland during the preceding year ending December 31st of said year. If any person, or corporation, shall fail to make such payment for a period of 30 days from and after such payment is required by this ordinance to be made, and after such license is due and payable as herein provided, the full amount thereof with an addition of ten (10) per centum thereof for such failure shall be due, and shall be collected from such person, or corporation, for the use of the City of Portland, and the same shall be and is hereby declared to be a debt due and owing from such person, or corporation, to the City of Portland. The city attorney of the City of Portland shall commence and prosecute to final determination in any court of competent jurisdiction an action at law to collect the said debt in the name of the City of Portland.

"Sec. 4. If any officer or agent of any corporation subject to the provisions of this ordinance shall fail, neglect or refuse to make or file such annual statement of the gross receipts of any corporation, of which he is such officer or agent, for a period of ten days after the first day of March of each year, or if any person subject to the provisions of this ordinance shall fail, neglect or refuse to make and file an annual statement of the gross receipts of the said person for the said period of ten days after the first day of March of each year, the said officer, agent, or person, as the case may be, shall, upon conviction thereof in the municipal court of the City of Portland, be punishable by a fine of not less than $50, nor more than $200 or by imprisonment in the city jail for not less than 10 days, nor more than 90 days, or by both such fine and imprisonment: Provided that each day after the expiration of the said period of 10 days, during which the said person or officer or agent, as the case may be, shall so fail, neglect or refuse to make and file such statement shall be considered a separate and distinct offense.

"Sec. 5. This ordinance shall take effect and be in force from and after its passage."

On March 9, 1912, the company filed a statement with the treasurer of the city, showing that it had received from its business within the city from June 6, 1911, to December 31st of that year, the aggregate sum of $995,826.69. The company failed to make any payment to the city and the latter then commenced this action to recover the percentage and penalty provided for by the ordinance amounting to $32,862.28. The complaint recited the ordinance and alleged the amount of the receipts from the business transacted by the company and that the defendant had failed to pay. The answer must be looked to for the remaining facts which are to be considered on this appeal.

We read in the answer that the defendant is engaged in the business of generating, distributing and selling electric energy in the city and elsewhere in the States of Oregon and Washington. Prior to 1903 five different franchises had been granted by proper municipal authorities in 1882, 1886, 1887, 1890 and 1891, respectively, to certain corporations and persons permitting the erection and maintenance of poles and wires in the streets for the distribution and sale of electricity. The five franchises passed into the hands of the Portland General Electric Company, a private corporation, which in turn transferred its poles and wires and franchises to the defendant in 1906, and ever since that time the latter has exercised the rights, powers and privileges conferred by the franchises, and the company has been engaged in generating electricity in and outside the city and has been distributing and selling electric energy within and also beyond the municipal limits and in Multnomah, Clackamas and Marion Counties.

A new charter was granted to the city by the legislative assembly in 1903 (Sp. Laws 1903, p. 3), and Section 106 of that charter continues and preserves all franchises, rights and privileges granted and in actual use. In 1903 an act was passed whereby the right of eminent domain was conferred upon companies engaged in conveying electric energy for distribution and sale, and also providing that any agreement or grant previously made by any municipal corporation of the right to build or maintain any lines of poles and wires for the purpose of conveying electricity in any incorporated city or town "is hereby confirmed": Laws 1903, p. 111; Section 6247, L. O. L., amended by Chapter 265, Laws 1911. The business of the company is not confined within the corporate limits of the city, but the defendant conveys, distributes and sells electric energy beyond the boundaries of Portland, in different parts of Multnomah, Clackamas and Marion Counties.

The board of state tax commissioners made an assessment of the property owned by the company, including real and personal property, rights of way, roadbed, cars, rolling stock, track, wagons, horses, office furniture, transmission poles, wires, conduits, machinery, appliances and all other property of a like or different kind used in carrying on the business of the defendant; in making the assessment the board took into consideration the reports, statements and returns filed in the office of the board, the earning power of the defendant and its franchises and special franchises, although the franchises and special franchises were not directly assessed, but were only taken into consideration in determining the value of the other property; and in making the assessment the board also capitalized the net earnings of the defendant for the year 1911. The assessments were completed, and the

board then certified to the county clerk of Multnomah County the value of defendant's property apportioned to that county, and the county clerk thereupon made the proper apportionment among the cities, towns, districts, road districts, ports and other municipal taxing agencies within the county, and then the assessor made the proper entries upon the county assessment-roll; and the defendant having paid its taxes for the year 1911 in Multnomah County, the city received its proper share of the taxes paid upon property owned by the company.

Subdivision 21 of Section 73 of the city charter authorizes the granting of licenses for the purpose of regulation or revenue or both. On September 26, 1900, the council passed an ordinance, numbered 11,784, entitled "An ordinance licensing, taxing and regulating for the purpose of city revenue, businesses, callings, trades and employments within said city." The terms of the ordinance require the defendant to pay upon its business of furnishing electricity for lighting and power purposes within the city a "license tax" of $75 per quarter year. The company has regularly paid the "license tax required by Ordinance No. 11,784, including that for the year 1911."

On March 11, 1911, the city granted to the Mt. Hood Railway & Power Company, a private corporation engaged in generating, distributing and selling electric energy, the right to maintain an electric system in the city for a period of 25 years, with privileges of the same character as those exercised by defendant under its franchises. The franchise owned by the Mt. Hood Railway & Power Company provides that it shall pay 2½ per cent of its gross receipts per year for all electrical energy for heat, light and power sold within the limits of the city, and "that no license or tax or charge

on the business or occupation of the said Mt. Hood Railway & Power Company shall be imposed upon, exacted or required of the said company, other than the said 2½ per cent of its gross receipts." The company has made contracts for lighting the streets and public highways within and without the cities of Salem and Portland, and for furnishing light, heat and power to the inhabitants of those cities, and to persons in Multnomah, Clackamas and Marion Counties.

The answer alleges that the ordinance complained of imposes upon the occupation of defendant a tax which is not equal and uniform with that imposed upon the business and occupation of the Mt. Hood Railway & Power Company, in violation of Article I, Section 32, of the state Constitution, which requires that "all taxation shall be equal and uniform." The company avers that the ordinance is exorbitant, unreasonable, far in excess of the cost of regulation of the business, and renders it impossible for the company to furnish electricity to its consumers at the rates provided for by its contracts; and it is alleged that the ordinance is therefore void, because it will deny the defendant the equal protection of the laws and deprive it of its property without due process of law, by preventing it from receiving "from each consumer of electric energy the cost of supplying and furnishing the same and the amount of income provided for such service by the contracts aforesaid." The defendant claims that the enforcement of the ordinance "will violate the obligation of the contracts existing between the defendant and its customers and consumers of electric energy," contrary to Section 10, of Article I, of the Constitution of the United States, prohibiting any state from passing any law impairing the obligation of contracts.

The company contends in its answer that subdivision 21 of Section 73 of the charter contains "the full

and sole grant of power to the city or its council or the voters thereof, with reference to taxes and licenses''; that the city has no power under its charter to tax corporations or businesses, and its sole power under the charter is to grant licenses; that the ordinance violates the charter provision by attempting to levy a license for a period longer than one year; that the compulsory payment of 3 per cent on the gross earnings in addition to the license tax already paid under Ordinance No. 11,784 upon the company's business and occupation would amount to double taxation, and contravene Article I, Section 32, and Article IX, Section I, of the state Constitution, which command that the legislature shall provide by law for uniform and equal rates of assessment and taxation, and that all taxation shall be equal and uniform.

The answer urges that, by the payment of taxes which were assessed and levied pursuant to the act of 1909, the company paid to the city a tax on its occupation, business and the right to do business in Portland for the year 1911, and that the enforcement of the ordinance would result in a double tax upon the occupation, business and goodwill of the business of the company, and on the right of the defendant to do business in the city, in violation of Article IX, Section I, and Article I, Section 32, of the state Constitution.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Henry A. Davie* and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Davie.*

For respondent there was a brief over the names of *Mr. Frederick V. Holman* and *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Holman.*

There was a brief and an oral argument by *Mr. William W. Cotton, Amicus Curiae.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. For the purpose of this investigation the demurrer filed by the city admits that all the affirmative averments appearing in the answer are true; hence, if the answer states a situation which would be sufficient to defeat the ordinance, then the judgment appealed from must be affirmed. If the ordinance occupies a position which is impregnable against the assaults of the answer, then the city is entitled to prevail. Condensing the answer, it is alleged: (1) That the ordinance imposes a tax which is not equal to the charge made upon the business of the Mt. Hood Railway & Power Company. (2) That the municipal legislation is unreasonable, and makes it impossible to furnish electricity to consumers at prices already contracted for, and therefore (a) the defendant is denied the equal protection of the law; (b) the company is deprived of its property without due process of law; and (c) the obligations of the contracts are impaired. (3) That subdivision 21 of Section 73 contains the only power which the city can exercise with reference to taxes and licenses; that the plaintiff cannot tax corporations or businesses, and can only grant licenses; and, further, that the enforcement of the gross earnings tax would amount to double taxation, because the company has paid the license exacted by the prior Ordinance No. 11,784. (4) That by the payment of the taxes which were assessed and levied pursuant to the act of 1909, the company paid a tax on its occupation, business, and right to do business, and that consequently a charge of 3 per cent on the gross earnings

would be equivalent to duplicate taxation of the occupation, business and right to do business. The contentions made by the defendant will be considered in the order in which they have been stated.

2, 3. In March, 1911, the city granted a franchise which permits the Mt. Hood Railway & Power Company, a private corporation, to erect and maintain poles and wires in the streets for the distribution and sale of electricity for light, heat and power. That franchise contains a provision which requires the Mt. Hood Railway & Power Company to pay the city 2½ per centum of the gross receipts from business done within the city, and "no license or tax or charge on the business or occupation of the said Mt. Hood Railway & Power Company shall be imposed upon, exacted or required of the said company, other than the said 2½ per cent of its gross receipts." The Mt. Hood Company is a corporation like the defendant, is engaged in the same kind of business, and possesses the same character of franchises. If by paying 2½ per centum on the gross receipts one company is exempted from paying any other "license or tax or charge on the business or occupation," while the other company is compelled to pay 3 per cent of the gross receipts derived from the same kind of business in the same territory, then the taxes would not be equal and uniform. Payment of the 2½ per centum of the gross receipts, as required by the franchise issued to the Mt. Hood Railway & Power Company, is the payment of a rental for the use of the streets, rather than a tax: *Nebraska Telephone Co.* v. *City of Lincoln,* 82 Neb. 59 (117 N. W. 284, 28 L. R. A. (N. S.) 221).

The city has no inherent power to exempt property from taxation; the charter does not authorize the plaintiff to exempt property from taxation, nor to exempt

the Mt. Hood Railway & Power Company from the payment of any other "license or tax or charge on the business or occupation": McQuillin, Mun. Corp., § 2399; Gray, Lim. of Tax. Power, § 1331; *City of Tampa* v. *Kaunitz,* 39 Fla. 683 (23 South. 416, 63 Am. St. Rep. 202); *Thomas* v. *Snead,* 99 Va. 613 (39 S. E. 586). Moreover, when a municipality is clothed with the police power, or given the right to tax, it possesses attributes of sovereignty which cannot be bartered away; and therefore the city could not lawfully agree to exempt any person or corporation from the payment of any other "license or tax or charge on the business or corporation." As was appropriately said in *State* v. *Hannibal & St. Joseph R. R. Co.,* 75 Mo. 208:

"For though municipal corporations may make such contracts as their respective charters authorize, they cannot so contract as to surrender or embarrass their legislative or governmental powers, or prevent the full and complete performance of their public duties—duties which result from such powers, which are conferred upon municipal corporations for public purposes and for the public good. Such powers, being in the nature of public trusts, are incapable of alienation or surrender. * * Among the most valuable and important of those public trusts and powers is that of taxation, without the exercise of which municipal government would cease to exist. No argument would seem necessary to show that the same principle, which forbids the absolute cession by a municipal corporation of the power of taxation over any given subject matter, likewise forbids that which approximates thereto. For if, for instance, it were allowable for a municipal corporation to abdicate its taxing power *pro tanto,* this would differ only in degree and not in kind from such abdication *in toto.* The exercise of either method of surrender of its legislative and governmental powers by a municipal corporation would,

if pushed to its natural and logical conclusion, destroy the municipal government."

The attempted exemption being ineffective, it follows that in contemplation of law there is no exemption in favor of the Mt. Hood Railway & Power Company; consequently there is no inequality in the burden of taxation.

4. The defendant is not denied the equal protection of the law merely because it has made contracts to furnish electricity at prescribed rates and the tax will diminish the profits on those contracts. Section 1 of the Fourteenth Amendment to the federal Constitution is not violated. Contracts must always be entered into with full knowledge that the government may at any time draw upon its extensive powers of taxation; and when the company made contracts to furnish light it did so subject to the right of the municipality to exercise its taxing power in all its fullness: 8 Cyc. 997.

5. Nor are the obligations of contracts impaired, and Article I of Section 10 of the national Constitution is not violated, by the collection of taxes which are imposed by a law passed subsequent to the making of a contract. The ordinance does not strike at the terms of the contracts; the agreements are preserved, and are enforceable now the same as before by both parties; the obligation of the contracts still binds to the same extent as before the passage of the ordinance, and there is no impairment of any obligations.

6, 7. In its brief the city argues that:

"The amount of the tax exacted is of no concern to the courts, and is not sufficient to prove the invalidity of the ordinance."

We shall assume for the moment that the ordinance provides for what is commonly termed an "occupa-

tion tax," because the city claims that the ordinance in dispute imposes an occupation or business tax; and, moreover, the attempted exaction cannot be sustained on any other theory. If an *ad valorem* tax is levied on property, then, in the absence of statutory, charter or constitutional restrictions, the only limits to the exercise of the power to tax are the necessities of the public treasury; but where a municipality is authorized to license occupations and businesses, either for the purpose of regulation or for revenue, the power cannot be used unreasonably, nor can the tax be fixed so high that it will practically prohibit the pursuit of ordinarily lawful businesses: Gray, Lim. of Tax. Power, § 1438; *Western Union Tel. Co.* v. *Fremont,* 39 Neb. 692 (58 N. W. 415, 26 L. R. A. 698, 700); *Ogden City* v. *Crossman,* 17 Utah, 66, 78 (53 Pac. 985). While it is true that the amount of the tax must be determined by the legislative discretion of the municipal authorities, nevertheless:

"Occupation or business taxes, particularly when imposed by municipal ordinance, must stop short of confiscation, and must not be so oppressive as to prohibit the individual from following the ordinary and usual useful occupations: 4 Dillon, Mun. Corp., § 1408.

The power of the city to tax occupations and businesses must not be confused with the right of the state to license a corporation to exist or to do business as a corporation. The two classes of cases are fundamentally different. When it is made plainly to appear that the amount of the occupation tax imposed upon an ordinarily and usual useful business is so great as to be confiscatory or prohibitory, the courts will declare the tax unreasonable and restrain its collection. If the enforcement of the ordinance will result in prohibition of the occupation or business, or

will be confiscatory, the defendant can plead the effects
of the ordinance as a good defense.   Other phases of
the answer make the pleading invulnerable to the de-
murrer, and therefore it will not be necessary to de-
cide, and we do not determine, whether the company
has pleaded sufficient facts, as distinguished from con-
clusions, to support the claim that the ordinance is
unreasonable.   We only announce that if the tax is in
fact so unreasonable as to be prohibitory and confisca-
tory, and if that fact is brought to the attention of
the court by proper pleading and proof, then the
court will annul the attempted tax.

8. Before entering upon a discussion of the effect
of the ordinance: (1) When viewed with relation to
the legislative act of 1909 and the payment of taxes
provided for by that statute; and (2) when considered
in connection with the charter of the city and the pay-
ment of the license tax of $75, which is required by a
prior ordinance numbered 11,784—it becomes neces-
sary to take some notice of tax laws in general, and
especially of the act of 1909 and also of the city
charter.

Chapter 218 of the Laws of 1909 is reproduced in
L. O. L., in Sections 3614 to 3660, inclusive.   Section
3614 creates a board of state tax commissioners, com-
posed of two persons, known as tax commissioners,
together with the Governor, Secretary of State, and
State Treasurer.   Section 3617 makes it the duty of
the board, by subdivision 1, to exercise general super-
vision of the system of taxation and collection of pub-
lic taxes throughout the state; by subdivision 6, to
issue instructions to certain officers as to the methods
best calculated to secure uniformity in the assessment
of taxes, to the end that a full cash valuation of all
property, real and personal, tangible and intangible,

including franchises and special franchises, shall be obtained; and by subdivision 15, to make an annual assessment, upon an assessment-roll prepared by the board, "of the property having a situs in this state" of certain companies, and "of such heat, light, power, water, gas and electric companies as may be doing business as one system, partly within this state and partly without, or so doing business in more than one county of the state." Section 3618 defines the term "property" so as to include all property, real and personal, subject to assessment for taxation under the act, belonging to the corporation, including rights of way, roadbed, cars, rolling stock, tracks, wagons, horses, office furniture, transmission poles, wires, conduits, switchboards, machinery, appliances, appurtenances and all other property of a like or different kind, used in carrying on the business, "and all other real and personal property, and all franchises and special franchises." Section 3619 states that "property having a situs in this state" includes all property, real and personal, of the corporation.

Section 3620 compels the corporations named in the act to file annual reports, showing among other numerous details the number and value of the shares of capital stock, the bonds and corporate obligations owing by the company, a complete statement of the real and personal property owned, the length of the company's line, "a statement in detail of the entire gross receipts and net earnings of the company from all sources," and such other facts or information as the board may require. After the reports are filed, Section 3622 makes it the duty of the board to prepare an assessment-roll upon which they shall assess the true cash value "of all the property of the companies herein enumerated subject to taxation. * * For the

purpose of arriving at the amount and character and true cash value of the property belonging to said companies as appearing upon the assessment-roll for the. purpose of assessment for taxation under this act, the said board may personally inspect the property belonging to said companies, and may take into consideration the statements filed under this act, the reports, statements or returns of said companies * * the earning power of said companies, the franchises and special franchises owned or used by said companies (said franchises and special franchises not to be directly assessed, but to be taken into consideration in determining the value of the other property)," and such other evidence as may be obtainable. Other sections make ample provisions for reviewing and correcting the roll. When the roll has been reviewed and made complete, the board certifies to the county clerks of the counties in which the company does business, the values apportioned to each of such counties. The several county clerks then apportion the amount certified to their respective counties among the cities, towns, school districts, road districts, ports and other municipal taxing agencies, and make appropriate entries in the assessment-roll which has been prepared by the county assessor; and then in the language of Section 3635:

"Taxes shall be levied and collected upon the assessments so made in the same manner as other taxes are levied and collected, and at the same time and by the same officers."

Section 3660 declares that the terms "persons," "company," "corporation," or "association," whenever used, shall apply "to any person, firm, joint-stock company, association, syndicate, copartnership, or cor-

poration engaged in or carrying on any business, the property of which is subject to taxation under this act.'' Section 3670, L. O. L. (Section 15 of Chapter 267 of Laws of 1907), prescribes that:

''All taxes hereinafter levied by any incorporated city or town, school district, road district, port, or municipal taxing agency, or district, shall be levied on the property therein respectively assessable upon the valuation of such property as shown by the assessment-roll last compiled by the assessor, corrected, and equalized by the county board of equalization, and including entries therein of assessments as certified by the state board of tax commissioners and apportioned to such municipalities by the county clerk.''

Section 3671, L. O. L., commands that all taxes levied by any incorporated city or town, ''now or hereafter authorized by law to levy taxes, shall be collected by the same officer and in the same manner and at the same time as taxes for county purposes are collected.''

In 1907 the legislature passed an act to provide a more efficient and equitable system for the assessment of property for taxation, defining property subject to taxation, defining the duties of the county assessor and prescribing the manner of making the assessment of property: Chapter 268, Laws 1907. That statute directs that all real property within this state, and all personal property situated or owned within this state, unless exempted by law, shall be subject to assessment and taxation in equal and ratable proportion. Section 2 of the act, reproduced in Section 3552, L. O. L., reads thus:

''The terms 'land,' 'real estate,' and 'real property,' as used in this act, shall be construed to include the land itself, whether laid out in town lots, or otherwise, above and under water, all buildings, structures, substructures, superstructures, and improvements erected upon, under, or above, or affixed to the same, and all

rights and privileges thereto belonging or in anywise appertaining; and all franchises and privileges granted by or pursuant to any law of this state, or municipal ordinance or resolution, owned or used by any person or corporation, other than the right to be a corporation. * * ''

Section 18 of the act of 1907, being Section 3586, L. O. L., makes it the duty of the county assessor to prepare an assessment-roll with a full and complete statement of all taxable property, which shall be valued at its true cash value; and:

"True cash value of all property shall be held and taken to mean the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power."

Section 3 of the charter (Special Laws of 1903) invests the city "within its limits with authority to perform all public services and with all governmental powers, except such as are expressly conferred by law upon other public corporations and subject to the limitations prescribed by the Constitution and laws of the state, except as hereinafter provided." Section 114 gives the city "power and authority * * to assess, levy, and collect taxes upon all property, both real and personal, not exempt from taxation. On or before the first Monday in February in each year, or, if the assessment upon which such levy is founded be not certified to the city officers prior to said day, then forthwith upon the execution of such certificate, the council shall levy the amount of taxes necessary," but such levy is limited to a fixed amount.

Section 285 commands the city to make an estimate of the necessary amount of money to be raised by the general taxes, and to levy the necessary tax, which shall be certified by the city auditor to the county clerk,

who shall then extend the tax in an appropriate column upon the county tax-roll. The tax is collected by the officer collecting the county tax and by him turned over to the city treasurer.

By subdivision 21 of Section 73, which appears under the heading "Finance and Revenue Powers," the city is impowered:

"To grant licenses, with the object of raising revenue or of regulation, or both, for any and all lawful acts, things, or purposes, and to fix, by ordinance, the amount to be paid therefor, and to provide for the revoking of the same. No license shall be granted to continue for a longer period than one year from the date thereof."

And finally, Section 74 enacts that:

"Enumeration of particular powers granted to the council in this charter shall not be construed to impair any general grant of power herein contained, nor to limit any such general grant to powers of the same class or classes as those so enumerated."

Having recited such parts of the legislation governing assessments and taxation throughout the state as are deemed applicable, and having directed attention to such provisions of the city charter as must be noticed, we now proceed to consider the scope and effect of the state-wide laws for the purpose of aiding a correct interpretation of the charter itself and in order to determine the extent to which the city can go in imposing taxes.

Since the defendant is one of the companies mentioned in the act of 1909 and transacts its business as one system "in more than one county of the state," its property is assessed by the board of tax commissioners. County assessors list and value the property of all owners who are not embraced by Chapter 218 of the Laws of 1909. Although the act of 1909 uses the

terms "company" and "corporation," still it must be remembered that those words are only employed for convenience, because the act applies to all owners, whether persons, firms or corporations, who are conducting any business, named in the statute, as one system in more than one county. When the statute of 1909 applies, the board of tax commissioners makes the assessment; but when the business does not come within the act of 1909, the assessment is made by the county assessor. The statute of 1907 directs that all real and personal property shall be assessed, and declares that real property not only includes the land itself, but also all rights and privileges belonging or appertaining to it as well as all franchises and privileges granted by or pursuant to any law or ordinance, owned or used by any person or corporation, "other than the right to be a corporation." The act of 1909 states that the term "property" shall include "all property, real and personal, subject to assessment for taxation under this act," and includes all franchises and special franchises (Section 3618, L. O. L.), although the franchises and special franchises are not directly assessed, but are taken into consideration in determining the value of the other property. When the assessment is made by the county assessor he must ascertain the "true cash value of all property, * * taking into consideration its earning power": Section 3586, L. O. L. If the board of tax commissioners makes the assessment, the amount is governed by the "true cash value," and for the purpose of determining that value the board may take into consideration "the entire gross receipts and net earnings of the company from all sources": Sections 3620 and 3622, L. O. L.

When the county assessor takes into consideration the earning power of property and when the board of

tax commissioners considers the gross receipts and net earnings, and then assesses specified property, the assessment is made on property named as such and is not an assessment made on receipts. It is true that the receipts and earning power affect and influence the valuation placed on the property, and yet the net result is an assessment of designated property, and when a tax is levied and paid on that assessment, it is a tax paid on property, and is not a tax on a business or occupation, nor is it a tax on income. It is common knowledge that in the practical administration of the act of 1909, receipts showing a loss wield as much influence in reducing the assessed valuation below what it would cost to reproduce the plant as receipts showing profits exercise in raising the assessment above what the cost of reproduction would be. The record does not pretend to indicate whether the defendant operated at a loss or a profit, and consequently we have no means of knowing whether the income from the business tended to lessen or enhance the valuation of the property which was actually assessed and taxed.

When the county assessor assesses real property, he includes franchises granted to corporations, except the right to be a corporation; and when the board of tax commissioners assessed the property of the defendant, the franchises and special franchises owned or used by the company were considered in determining the value of the other property, although the franchises were not directly assessed. When the assessor assesses franchises, he places a value on them as property having value, and a tax paid on that assessment is a tax paid on property. When the board of tax commissioners takes into consideration a franchise owned or used by a corporation, and if that franchise has enhanced the value of other property

which is assessed then, if it can be said that the franchise is assessed at all, a tax on that other property is at most only an indirect tax on the franchise considered as property having a value, and in the final analysis is a property tax.

The legislation enacted in 1907 and in 1909 prescribes a carefully devised and comprehensive system for the assessment and taxation of property, in obedience to the commands of Section 32 of Article I of the state Constitution, requiring that "all taxation shall be equal and uniform," and in full compliance with Section 1 of Article IX of the organic law, which declares that "the legislative assembly shall provide by law for uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal," except such as may be especially exempted by law. The statutes of 1907 and 1909 specify what property shall be assessed and taxed. The plaintiff is permitted to levy the taxes for its municipal needs, but it has no independent power to say upon what property those taxes may be levied, because the legislature has specified what property shall be assessed and has also designated the officers who alone can and must perform the duty of listing and assessing property. The city must make its levy on the assessment-roll prepared for the county, and all taxes levied on property are confined to that assessment-roll: *State of Oregon v. Wells Fargo & Co.*, 64 Or. 421, 432 (126 Pac. 611, 130 Pac. 983).

The power conferred upon the city by Section 114 of the charter "to assess, levy and collect taxes upon all property, both real and personal," does not give the city the right to assess property for the purpose of taxation. By the very terms of that section of the

charter the taxes are levied on the assessment certified "to the city officers," and by Section 285 the tax levied shall be certified to the county clerk, "who shall extend the said tax in an appropriate column upon the county tax-roll." The word "assess," appearing in Section 114, when applied to the instant case, does not mean to value property for taxation; but, as was said in *South Covington & Cincinnati Street R. Co.* v. *Bellevue*, 105 Ky. 283 (49 S. W. 23, 57 L. R. A. 50).

"In the place used it means to levy a tax, and does not mean the valuation of property for taxation."

Nor does the *omnibus* character of Section 3 of the charter, even when supplemented and fortified by Section 74, empower the city to assess any property it may choose to designate and then impose a tax on that property. The legislature has exercised its constitutional right and has performed its constitutional duty by prescribing "such regulations as shall secure a just valuation for taxation of all property." Those regulations specify the items of property which are to be assessed, and the city cannot enlarge or lessen the specifications, because all property taxes levied by any incorporated city shall be levied on the property therein assessed upon the valuation shown by the assessment-roll compiled by the assessor: Section 3670, L. O. L. The ordinance is therefore void if it imposes a tax on a franchise as property; and the ordinance is likewise void if the tax is levied on the earnings as property. Property taxes, when levied by the city, must be on the property listed and valued in the county assessment-roll.

9–13. The charter expressly permits the city to grant licenses, with the object of raising revenue, or of regulation, or both, for any and all lawful acts, things, or purposes; but when any part of this speci-

fied power is exercised it must be subject to any limitations that may be imposed by the language which specifically confers the right to use the power, because neither the broad reach of Section 3 nor the asseverations of Section 74 of the charter can abrogate the limitations, restrictions or bounds placed upon the exercise of a specifically enumerated power. The *omnibus* sections do not alter or even enlarge the special section, which authorizes the licensing of acts, things or purposes. The power to license occupations and businesses is found in subdivision 21 of Section 73, and, having been embraced by that section, it is not set at large by any general grant or power: *The Laundry License Case* (D. C.), 22 Fed. 701, 703; 2 Dillon, Mun. Corp., §§ 585, 586; 1 McQuillin, Mun. Corp., p. 762; *State* v. *Butler,* 178 Mo. 272 (77 S. W. 560); *Gray* v. *City of Omaha,* 80 Neb. 526 (114 N. W. 600, 14 L. R. A. (N. S.) 1033); *Southwestern Tel. & Tel. Co.* v. *Dallas,* 104 Tex. 114 (134 S. W. 321). The rule is especially applicable to the power to tax (4 Dillon, Mun. Corp. (5 ed.), § 1378), because a city possesses no inherent power to tax and "the grant relied upon must be evident and unmistakable, and all doubts will be resolved against its exercise, and in favor of the taxpayer": *Corbett* v. *City of Portland,* 31 Or. 407, 415 (48 Pac. 428); *Stevens* v. *Taylor,* 79 Or. 424 (154 Pac. 896). In *Southwestern Tel. & Tel. Co.* v. *City of Dallas,* 104 Tex. 114 (134 S. W. 321), the Supreme Court of Texas, when construing a charter containing an *omnibus* section quite like the Portland charter, held that:

"A municipal corporation possesses no power not derived from its charter; therefore the general terms 'full powers of self-government,' and 'all powers of municipal government not prohibited by this charter,' add nothing to the terms of the charter."

The statute which serves as the organic law for the city plainly contemplates that if a tax, whether for regulation or for revenue, is imposed upon a business or occupation, it is to be done pursuant to the authority of subdivision 21 of Section 73; and there is not even plausibility in the argument that a business can be taxed for revenue or for regulation under the special grant and again taxed under the general grant of power. The ordinance imposes either a direct tax on the gross earnings as property, or else a tax on the business or occupation. Power to tax the earnings as such is wanting, and authority to tax the business must be referable to subdivision 21 of Section 73, and to no other provision of the charter. It will become necessary to determine the character of the litigated tax; but, before analyzing the ordinance to ascertain what it was intended to tax, the wide range taken by the arguments found in 14 printed briefs filed in this and in a companion case renders it necessary to make some survey of the field covered by the power to tax.

An *ad valorem* tax may be imposed on property, and in addition the owner of that property may be charged for the privilege of carrying on a business, even though the property upon which he has paid a tax is used in the business; and duplicate taxation does not result from the simultaneous payment of a property tax and an occupation or business tax. There is a wide difference between the payment of one tax upon property and another upon the business: 1 Cooley, Tax. (3 ed.), 395; Gray, Lim. of Tax. Powers, p. 679. Or as is concisely stated in 37 Cyc. 754:

"There is no constitutional objection to the levy of a license tax for the privilege of carrying on a particular business and at the same time a tax on the property employed in the business."

A corporation may be compelled to pay an annual fee for the right to transact business as a corporation, and at the same time be charged with a business or occupation tax, and also be obliged to pay an *ad valorem* tax on property owned by it, without violating the constitutional inhibition against double taxation: Gray, Lim. of Tax. Power, p. 682; *Cobb v. Commissioners of Durham County,* 122 N. C. 307 (30 S. E. 338).

The state may for a prescribed annual fee sell to corporations the right to transact business as corporations, and when obtained the rights become franchises; a municipality may sell to an individual or to a corporation the privilege of using the public streets for some particular purpose, for example, to erect poles and wires for the distribution of electricity, or the laying of pipes to convey gas, and that privilege, when secured, becomes a special franchise; and yet the legislature may treat those franchises as things having value and subject them to the payment of a property tax: *Nebraska Tel. Co. v. City of Lincoln,* 82 Neb. 59 (117 N. W. 284, 28 L. R. A. (N. S.) 221); *Cumberland T. & T. Co. v. Hopkins,* 121 Ky. 850 (90 S. W. 594); Gray, Lim. of Tax. Power, §§ 37a, 60; 1 Cooley, Tax. (3 ed.), p. 686.

The imposition of a property or *ad valorem* tax on franchises considered as property at the behest of the state does not preclude a municipality from charging the owner of the franchises for the privilege of actually carrying on business; or, in other words, the payment of a property tax does not preclude the collection of an occupation or business tax. A tax on the right to do business as a corporation, or on the right to exercise a special privilege, may be levied as a tax on property, and is distinct from a license or privilege

tax on the actual doing of the business: *Nebraska Tel. Co.* v. *City of Lincoln,* 82 Neb. 59 (117 N. W. 284, 28 L. R. A. (N. S.) 221); Gray, Lim. of Tax. Power, § 1367; *Brooklyn City R. R. Co.* v. *New York,* 199 U. S. 48 (50 L. Ed. 79, 25 Sup. Ct. Rep. 713). A property tax must be on an *ad valorem* basis, because it is a direct tax on property; but there is no constitutional requirement that a business or occupation tax shall be so measured: *Ellis* v. *Frazier,* 38 Or. 462 (63 Pac. 642, 53 L. R. A. 454). Judicial precedents have firmly established the rule that a definite per centum of the gross receipts of the business may be taken as the measure of the amount to be paid for the privilege of actually transacting a business, and, moreover, this method of ascertaining the amount of a license tax, whether on a business or for the privilege of doing business in a corporate capacity, is not necessarily a tax on the earnings: *Cobb* v. *Commissioners of Durham County,* 122 N. C. 307 (30 S. E. 338); *Nebraska Tel. Co.* v. *City of Lincoln,* 82 Neb. 59 (111 N. W. 284, 28 L. R. A. (N. S.) 221); 4 Dillon, Mun. Corp. (5 ed.), p. 2473; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114 (54 L. Ed. 688, 30 Sup. Ct. Rep. 496); *Society for Savings* v. *Coite,* 6 Wall. 594 (18 L. Ed. 897); *Provident Inst.* v. *Massachusetts,* 6 Wall. 611 (18 L. Ed. 907); *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632 (18 L. Ed. 904); *Commonwealth* v. *New York L. E. & W. R. Co.,* 150 Pa. 234 (24 Atl. 609); *In re Railroad Taxation,* 102 Me. 527 (66 Atl. 726); 25 Cyc. 608, 627.

It must therefore be conceded to be authoritatively established that taxes, charges and fees may be simultaneously exacted of a corporation, so as to compel it to pay: (1) An *ad valorem* or property tax on all property owned by it, including franchises when they are considered as property; (2) a license or privilege

tax on business; and (3) a fee to the state for its franchise or right to do business as a corporation.

The right to exact different kinds of taxes sometimes makes it difficult to know the character of tax intended to be imposed. It has been argued with much insistence that since the defendant has already paid a property tax on its property, which was valued and assessed by taking into consideration the franchises used and owned by the company, the enforcement of the ordinance will result in duplicate taxation, on the theory that the ordinance is a tax on corporate franchises. In order to reach the conclusion urged upon us, an attempt is made to establish a parallelism between the ordinance and an act which was passed in 1906 by the legal voters of the state levying a license on the gross earnings of certain companies: See Laws 1907, p. 7. The argument is that the state law and the ordinance are substantially the same; that this court decided that the state law imposed a tax on corporate franchises; and that therefore the same construction must necessarily be placed upon the ordinance. Some notice must first be taken of the statute and the ordinance. The statute, since repealed, required express, telegraph and telephone companies to pay 3 per cent upon the gross receipts in this state. Any person or persons, joint-stock company, or corporation engaged in the business ''shall be deemed to be an express company''; and the statement which must be filed, showing the gross receipts, must contain the name of the company, ''the nature of the company, whether a person or persons, company or corporation.'' It will therefore be seen that the word ''company,'' is used in the act as a term of convenience, and that the legislation applied to a person as well as to a corporation, so that if ''a person'' is engaged in the express business,

he was liable to pay the tax imposed by the statute. A person engaged in the express business does not possess or exercise any corporate franchise because he can do business as an individual, and no special franchise of any kind was granted, or needed, or used; and consequently if a person conducted an express business, and paid a 3 per cent tax on his gross receipts, he did not pay a tax on a franchise, because he had no franchise to be taxed. Notwithstanding the language employed in *Oregon* v. *Pacific States Tel. & Tel. Co.,* 53 Or. 162 (99 Pac. 427), the tax provided for by the state law was not necessarily laid on franchises: *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114 (54 L. Ed. 688, 30 Sup. Ct. Rep. 496).

The ordinance requires "every person or corporation, engaged in the business of selling electricity, or electric current, for lighting, heating, power or other commercial purposes within" Portland, to pay the exaction, and by the express terms of the ordinance the word "person" includes an individual or copartnership. If an individual owns and operates the business, then there is no corporate franchise to tax. It is true that the individual could not maintain poles and wires in the streets without a special franchise from the city. The ordinance does not make the right to collect the tax depend upon the existence of a franchise of any kind, but it is designed to lay hold of every corporation and person who is engaged in the business of selling electricity; and if the owner carries on the business as an individual, then there is no corporate franchise to tax, and there would not even be a special franchise to tax, if the owner did not have one. There is no merit in the contention that the ordinance imposes a tax on franchises.

The theory that the ordinance imposes a tax on franchises is predicated upon cases like *Society for Savings* v. *Coite,* 6 Wall. 594 (18 L. Ed. 897); *Provident Inst.* v. *Massachusetts,* 6 Wall. 611 (18 L. Ed. 907); *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632 (18 L. Ed. 904); *Home Ins. Co.* v. *New York,* 134 U. S. 594 (33 L. Ed. 1025, 10 Sup. Ct. Rep. 593); *People* v. *Knight,* 174 N. Y. 475 (67 N. E. 65, 63 L. R. A. 87); *Commonwealth* v. *Railroad,* 150 Pa. 234 (24 Atl. 609); *In re Railroad Taxation,* 102 Me. 527 (66 Atl. 726). An examination of the cases cited will demonstrate that, without a single exception, the legislation construed by the courts applied only to corporations or associations doing business under charters and did not include individuals. The method adopted for ascertaining the amount of the tax did not serve as the test by which to determine the character of the tax, but the object of the legislation was, like our corporation license act of 1903 (Laws 1903, p. 39), to impose and collect a charge for the privilege "of doing business in a corporate capacity": *Home Ins. Co.* v. *New York,* 134 U. S. 594, 599 (33 L. Ed. 1025, 10 Sup. Ct. Rep. 593).

14–20. The term "franchise" is not always used with discrimination. The granting of a privilege to maintain poles and wires in the street for the distribution of electricity is a special franchise, or a franchise "to do," and may be owned by an individual or corporation. When associated with corporations, the word "franchise" has various significations. The franchise "to be" may refer to the grant of corporate life, or it may relate to the privilege of continuing to exist as a corporation. The franchise "to do" may refer to the right to do business generally as a corporation, or it may signify the corporate power to transact the particular business and do the things

specifically enumerated in the articles of incorporation: Gray, Lim. of Tax. Power, §§ 47a, 51, 54. The state may impose license or privilege taxes on corporate franchises "to be" and on corporate franchises "to do," as is done by the corporation license act of 1903: Laws 1903, p. 39. A percentage of the gross income, as well as other methods, have been employed for ascertaining the amount of the license or privilege tax to be charged for corporate franchises "to be" or "to do," just as different methods may be adopted for license taxes on occupations or businesses: Gray, Lim. of Tax. Power, § 58; 37 Cyc. 820, 863; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 603 (33 L. Ed. 1025, 10 Sup. Ct. Rep. 593). But the method of ascertaining the amount does not of itself define the character of the tax.

The city argues that the tax is only imposed on the business, and that therefore it is valid because within the purview of the power to license acts, things or purposes with the object of raising revenue, or of regulation, or both; while insisting that the ordinance is void because of failure to observe the limitations prescribed by the charter, the company also contends that the city has already exercised its power to license by enacting Ordinance No. 11,784, and since the plaintiff enforced that ordinance, and the defendant paid the license charges, for the year 1911, the second ordinance is void because amounting to double taxation; and the city replies to the argument of the company by insisting that the second ordinance repeals the first by implication. When examining municipal legislation to ascertain what was intended when ordinances were enacted, and when seeking to learn whether the second impliedly repeals the first ordinance, we must keep in mind certain rules which are designed to aid

in arriving at a correct understanding of the assailed ordinance. The presumption is against legislative intention to impose double taxation: 37 Cyc. 755; 1 Cooley, Tax., p. 398. "Where a statute is open to two constructions, one of which will render it unreasonable and unconstitutional, while the other will harmonize with reason, justice and constitutional prescriptions, the latter construction will be adopted": *Coach* v. *Gage,* 70 Or. 182, 189 (138 Pac. 847). But, on the other hand, repeals by implication are not favored: *State ex rel.* v. *Malheur County Court,* 54 Or. 255 (101 Pac. 907, 103 Pac. 446). And, moreover, while not absolutely controlling, the legislative designation is an important factor in determining the character of the tax imposed: Gray, Lim. of Tax. Power, p. 42.

We have determined that this ordinance is void if considered as a tax on property; that it can only be sustained on the theory that it is a license or privilege tax on the occupation or business; and that if it is an occupation or business tax, it must be referable to subdivision 21 of Section 73 of the charter for its authority to stand. We must therefore analyze the language which confers the power. "To grant licenses" serves as the keynote to subdivision 21 of Section 73 of the charter; and it must also be noted that this section of the charter provides "for the revoking" of licenses, and, furthermore, "no license shall be granted to continue for a longer period than one year from the date thereof." Licenses may be granted for regulation or for revenue: *Kellaher* v. *Portland,* 57 Or. 575, 579 (110 Pac. 492, 112 Pac. 1076); *Abraham* v. *Roseburg,* 55 Or. 359, 362 (105 Pac. 401, Ann. Cas. 1912A, 597). When the tax is paid it amounts to the payment of a license tax on the occupation or business. Assuming, without deciding, that it is not necessary

to issue a paper commonly called a license, nevertheless, the exercise of the power to license involves the granting of permission to do something which could not lawfully be done without such permission: *The Laundry Case* (D. C.), 22 Fed. 701, 703; *Reser v. Umatilla County*, 48 Or. 326, 329 (86 Pac. 595, 120 Am. St. Rep. 815); *Home Ins. Co. v. Augusta*, 50 Ga. 530.

If the ordinance was intended to come within the purview of the power "to grant licenses" we would naturally expect to find at least some of the earmarks of a license. No phase of the ordinance presents any semblance of a license; not even a pretense is made of granting a license; nothing is prohibited; failure to pay the tax only creates a debt, and continuance of the business is not inhibited; the very terms of the title of the ordinance indicate that the design is "to levy a license on the gross receipts of persons and corporations" who are engaged in selling electricity. The absence of words of repeal, while not conclusive, is at least significant, especially when taken in connection with the fact that Ordinance No. 11,784 has been enforced and the license fees for the year 1911 have been paid. If the second ordinance was intended as an exercise of the power to license, on account of the character of the two ordinances, one would expect to find words of repeal in the second ordinance because the first embraces "businesses, callings, trades and employments," while the second is confined to corporations and persons who sell electricity. The second ordinance is not an exercise of the power "to grant licenses." It does not repeal, nor was it intended to repeal, the first ordinance; but, in the language of Mr. Justice HOLMES, the second ordinance "is merely an effort to reach the gross receipts, not even disguised by the name of an occupation tax": *Galveston*

*etc. Ry. Co.* v. *Texas,* 210 U. S. 217 (52 L. Ed. 1031, 28 Sup. Ct. Rep. 638).

The ordinance is void if considered as a property tax; it was not enacted as an exercise of the power granted by subdivision 21 of Section 73, and is therefore void, because without charter authority: *Robertson* v. *Portland,* 77 Or. 121 (149 Pac. 545). The answer states a good defense, and the judgment of the trial court is affirmed.                   Affirmed.

Mr. Justice Eakin absent.

Mr. Justice Burnett delivered the following dissenting opinion:

As against the demurrer to the answer in this case, Mr. Justice Harris has pointed out very clearly that it is a good defense to say that the amount of the occupation tax in question is so great as to be confiscatory, and hence that the court will enjoin its collection. On this ground I concur in the result of the opinion, but withhold my assent to the conclusion that an ordinance of the kind is not under any circumstances a permissible exercise of the authority conferred upon the council by subdivision 21 of Section 73 of the charter.

Mr. Chief Justice Moore concurs in this opinion.